**James McNAIR, et al., Plaintiffs,**

v.

**Louis CARDIMONE, et al., Defendants.**

**No. C–1–85–1624.**

United States District Court,
S.D. Ohio, W.D.

Dec. 31, 1987.

Theodore Kern, Ohio Legal Rights Service, Columbus, Ohio, for plaintiffs.

George E. Roberts, III, Cincinnati, Ohio, for defendants.

## ORDER

HERMAN J. WEBER, District Judge.

This matter is before the Court upon the Report and Recommendation of the United States Magistrate (doc. no. 28) and the parties' objections and responses thereto. Plaintiffs bring this action pursuant to 20 U.S.C. § 1400 *et seq.*, the Education of the Handicapped Act (the "Act") alleging that defendants violated the Act, the Federal Regulations, 34 C.F.R. §§ 300.403, 300.451, and 76.654, and Ohio Revised Code Chapter 3323 which incorporates the Act into Ohio law, by refusing to provide free transportation to and from a private school for Kelly McNair, a hearing-impaired elementary student.

The parties filed cross-Motions for Summary Judgment. The Magistrate's Report recommends that summary judgment be denied as to plaintiffs and granted in favor of defendants.

The issue presented for review is whether a state which provides a free appropriate public education for a handicapped child is responsible to pay for the transportation of that child to a private school when the placement decision is made by the parents of the child for their own personal reasons and not by the state educational agency. It is uncontroverted that a free appropriate public education with the related service of transportation is available to this child and, until her placement by her parents in a private school, the child was provided a free appropriate public education with related services including transportation.

The procedural background, the legal standard for summary judgment and the undisputed material facts are accurately set forth in the Magistrate's Report and are incorporated herein. The state administrative proceedings have been summarized by the Magistrate and it has been established that plaintiffs were afforded procedural due process in accordance with the Act and Ohio Revised Code Chapter 3323. Title 20 U.S.C. § 1415 vests jurisdiction over this Complaint in this Court as

plaintiffs are appealing the decision of the state educational agency that Kelly McNair is not entitled to free transportation to and from her private school and that her parents are not entitled to reimbursement for the costs thereof.

Upon finding that the state has complied with the Act's procedural requirements, the Court must conduct a de novo review of the question of whether the state has complied with the substantive requirements of the Act.

As an initial matter, the Court finds that Kelly McNair is a handicapped child within the meaning of the Act and requires special education and related services. 20 U.S.C. § 1401(1); 34 C.F.R. § 300.5(a) and (b)(3). Further, the Court finds that the defendant state educational agency did provide a free appropriate education with special instructional classes designed to meet Kelly's needs and related services including, in her case, transportation to enable her to benefit from that special education; neither the appropriateness nor the availability of the local educational program is at issue. Kelly's special education and transportation were provided at no cost to her parents by defendants during the 1982–83, 1983–84 and 1984–85 school years. 20 U.S.C. § 1401(16) and (18); 34 C.F.R. § 300.14. Kelly's parents then enrolled Kelly at St. Rita's School for the Deaf ("St. Rita's"), a non-public school, for the 1985–86 school year.

I. The Magistrate and defendants maintain that the transportation to and from the private school is not a "related service" because Kelly does not require special transportation by virtue of her handicap. This argument is based on an interpretation of § 1401(17) of the Act which states in pertinent part:

> "The term 'related services' means transportation ... as may be required to assist a handicapped child to benefit from special education...."

The interpretation advanced by the Magistrate and defendants is that a service is not a related service within the meaning of the Act unless it is required by the nature of the handicap. This reasoning focuses on the language of the statute that the service "... be required to assist a handicapped child to benefit...." Thus, the Magistrate held that transportation as a state service under the federal requirements is limited to handicapped children with physical handicaps that impair mobility.

The key term used throughout the Act is "special education;" the term "related services" is only used in conjunction with the term "special education." Special education is defined in the Act and Federal Regulations:

> [T]he term 'special education' means specially designed instruction, *at no cost to the parent*, to meet the unique needs of a handicapped child ... (Emphasis added).

20 U.S.C. § 1401(16); 34 C.F.R. § 300.14(a)(1).

An educational program or instructional class which the parents unilaterally choose for their own reasons and for which the parents pay the cost is not "special education" within the meaning and intent of the Act. Rather, "special education" means the educational program established and monitored by the state, financed with authorized state and federal funds as expressly mandated by the Act to appropriately educate the handicapped. Accordingly, the related services, required by the federal statutes and regulations, are those required to be provided to the handicapped child with regard to the child's "special education" program. Nowhere does the Act require the state to provide related services for anything other than what the state has designed and offered as "special education". Therefore, if transportation services need to be provided to handicapped children in order for them to participate in special education, the state is required to provide transportation service even though such service is not required by the nature of their handicap. The first objection to the report of the Magistrate is well taken.

II. Plaintiffs next argue that a local school district must pay for a child's related services when the child's parents unilaterally choose for their own reasons to place

her in a private school even though the school district has provided a free appropriate public education for the child with the related services including transportation for the child.

The plaintiffs rely on Sections 300.450–460 of the Regulations which address the requirements with regard to handicapped children in private schools not placed or referred by public agencies. Federal Regulation 34 C.F.R. § 300.403(a) provides:

If a handicapped child has available a free appropriate public education and the parents choose to place the child in a private school or facility, the public agency is not required by this part to pay for the child's education at the private school or facility. However, the public agency shall make services available to the child as provided under §§ 300.450–300.460.

■ Under the applicable Regulations, the state is obligated to provide for the participation of private school handicapped children in the program assisted or carried out under the Act. 34 C.F.R. § 300.451. Considering the definition of "special education" supplied in the Act, the Regulations require the state to design and provide a program of special instruction, education and services related to that program at no cost to the parents of that private school handicapped child and permit the child to participate in that program. The Regulations do not require the state to assume the cost of a private education for a handicapped child or the cost of services related to that private education which has been selected by the parents of the child for their own personal reasons, where the state has fulfilled its obligation by making its own appropriate program and related services available to those private school handicapped children.

■ The Magistrate and defendants interpret the word "related" in related services as meaning "related to the handicap." This reasoning emphasizes the nature of the handicap and the relationship between the particular handicap and the particular service. This interpretation is restrictive and unsupported by the language of the Act which does not differentiate between types of handicaps and does not qualify related services according to a type of handicap. The Court defines the term "related services" to mean services relating to the special education program set up by the state, to fulfill its mandate "to provide for the education of all handicapped children." 30 C.F.R. § 300.01. The related services requirement is intended to assure that not only will a free appropriate program be designed and offered by the state, but that the means to attend and benefit from that program will also be made available by the state.

It is important and helpful in our analysis to note the Congressional findings in the Act and the purposes expressed in the Regulations. There, we are instructed that, *inter alia,* the Act is intended to provide handicapped children with appropriate educational services designed to meet their unique needs, giving them equality of opportunity to go through the educational process with their peers rather than being excluded entirely from the public school system, and to assist the states and localities financially in their efforts to reach these goals.

The United States Supreme Court examined these same considerations in *Board of Education v. Rowley,* 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982), and upon review of the policies, procedures and objectives of the Act, concluded:

In explaining the need for federal legislation, the House Report noted that 'no Congressional legislation has required a precise guarantee for handicapped children, i.e. a basic floor of opportunity that would bring into compliance all school districts with the Constitutional right of equal protection with respect to handicapped children.' [H.R.Rep. No. 94–332 (1975)]. Assuming that the Act was designed to fill the need identified in the House Report—that is, to provide a 'basic floor of opportunity' consistent with equal protection—neither the Act nor its history persuasively demonstrates that Congress thought that equal protection required anything more than equal access. Therefore, Congress' desire to pro-

vide specialized educational services, even in furtherance of 'equality,' cannot be read as imposing any particular substantive educational standard upon the States.

458 U.S. at 200, 102 S.Ct. at 3047.

[T]he requirement that a State provide specialized educational services to handicapped children generates no additional requirement that services so provided be sufficient to maximize each child's potential 'commensurate with the opportunity provided other children.' [T]o require ... the furnishing of every special service necessary to maximize each handicapped child's potential is, we think, further than Congress intended to go.

*Id.* at 198–99, 102 S.Ct. at 3046–47.

When the language of the Act and its legislative history are considered together, the requirements imposed by Congress become tolerably clear. Insofar as a State is required to provide a handicapped child with a 'free appropriate public education,' we hold that it satisfies this requirement by providing personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction. Such instruction and services must be provided at public expense....

*Id.* at 203, 102 S.Ct. at 3049.

■ This Court does not read the Act to require states to use funds appropriated for these purposes to subsidize private programs where a state program which would appropriately educate the handicapped child is made available at no cost to the child. To impose such an obligation upon the states would dilute the efforts of the federal, state and local governments by draining funds from the appropriate public program to the benefit of those who had the means to attend private programs, further taxing an already demanding obligation placed on government. Congress did not intend the public to bear the additional expense of a special private education for handicapped children where those children have already been provided a free, appropriate special education program and services related to that program by the state. In *Rowley,* the Supreme Court cautioned:

In assuring that the requirements of the Act have been met, courts must be careful to avoid imposing their view of preferrable educational methods upon the States. The primary responsibility for formulating the education to be accorded a handicapped child, and for choosing the educational method most suitable to the child's needs, was left by the Act to state and local educational agencies in cooperation with the parents or guardian of the child. The Act expressly charges States with the responsibility of 'acquiring and disseminating to teachers and administrators of programs for handicapped children significant information derived from educational research, demonstration, and similar projects, and [of] adopting, where appropriate, promising educational practices and materials.' § 1413(a)(3). In the face of such a clear statutory directive, it seems highly unlikely that Congress intended courts to overturn a State's choice of appropriate educational theories in a proceeding conducted pursuant to Section 1415(e)(2).

We previously have cautioned that courts lack the 'specialized knowledge and experience' necessary to resolve 'persistent and difficult questions of educational policy'. *San Antonio Independent School District v. Rodriguez,* [411 U.S. 1, 42, 93 S.Ct. 1278, 1301, 36 L.Ed.2d 16 (1973)]. We think that Congress shared that view when it passed the Act. As already demonstrated, Congress' intention was not that the Act displaced the primacy of States in the field of education, but that States receive funds to assist them in extending their educational systems to the handicapped. (Footnotes omitted).

458 U.S. at 207–208, 102 S.Ct. at 3051–3052; *see also, Rettig v. Kent City School District,* 720 F.2d 463 (6th Cir.1983).

Kelly McNair's parents unilaterally decided to place her in a private school. She was not referred to nor placed in a private school or facility by the state public agen-

cy. The state has the primary responsibility for formulating an educational program and for choosing the methods most suitable to a handicapped child's needs. The state public agency is responsible to ensure that the rights of handicapped children and their parents are protected. *Board of Education v. Rowley*, 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). Those responsibilities include placing a handicapped child in a private program when the state determines that such private placement is necessary or, in other words, in the event the state cannot provide a free appropriate education with specially designed instructional classes to meet the needs of the handicapped child. Such placement must be at no cost to the parents of the child. 20 U.S.C. § 1400; 34 C.F.R. §§ 300.01, 300.-02, 300.302, 300.400–403.

■ The Court agrees with the legal reasoning in the Magistrate's Report interpreting 20 U.S.C. §§ 1413(a)(4)(A) and (a)(4)(B) and 34 C.F.R. § 300.452 to mean that a local school district need not pay for the services related to the handicapped child's private education when the child's parents have made that placement decision. The statute and regulations are construed to require the state to make a special education and services related to that special education available to all handicapped children at no cost as has been afforded to this child by the state in this case.

III. Plaintiffs argue that 34 C.r.R. § 76.654 requires defendant to provide transportation services for this child. That section states:

(a) *Comparable benefits.* The program benefits that a subgrantee provides for students enrolled in private schools must be comparable in quality, scope, and opportunity for participation to the program benefits that the subgrantee provides for students enrolled in public schools.

(b) *Same benefits.* If a subgrantee uses funds under a program for public school students in a particular attendance area, or grade or age level, the subgrantee shall insure equitable opportunities for participation by students enrolled in private schools who—

(1) Have the same needs as the public school students to be served; and

(2) Are in that group, attendance area, or age or grade level.

It is uncontroverted that Kelly would receive transportation as a related service to her "special education" as part and parcel to her free appropriate public education; it is also uncontroverted that the distance of travel is less to this private school than to Kelly's special education program in public school, and that she would not receive the transportation to either the private school or special education program at the public school as a general member of the school district population.

■ Pursuant to 34 C.F.R. § 300.451(b), a state educational agency must insure that with respect to a handicapped student, voluntarily placed in a private school by the parents, the requirements of 34 C.F.R. §§ 76.651–.663 are met. Accordingly, where the state has established a program providing for the free appropriate public education of handicapped students with transportation, an opportunity for participation in that program by private school students must be extended. It is uncontroverted that the child has been afforded this opportunity, thus the state has fulfilled its obligation under § 300.451(b) to comply with § 76.654 when it makes a free appropriate public education available to a private school student and provides the student with an opportunity to participate in programs funded under the Act within the jurisdiction served by the local school district. The state is not required to provide duplicate services at the private school. Section 76.654 imposes no additional requirement that the state pay for a child's special education and related services when the child's parents decline the free appropriate public education offered by the state and choose to enroll the child in a private school.

IV. Our holding today is consistent with the controlling authority cited by and relied upon by the Magistrate and plaintiffs. In *Irving Independent School District v. Tatro*, 468 U.S. 883, 104 S.Ct. 3371, 82 L.Ed. 2d 664 (1984), the United States Supreme Court addressed the problematic issue of determining what services must be provid-

ed under the Act as a "related service." In *Irving,* the Court held that "only those services necessary to aid a handicapped child to benefit from a *special education* must be provided." (Emphasis added). 468 U.S. at 894, 104 S.Ct. at 3378.

In *Burlington School Committee v. Department of Education,* 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985), the United States Supreme Court authorized reimbursement to parents of a handicapped child for their expenditures on a private special education based on the specific finding that the free public special education was not appropriate, and that private placement was the only alternative to meet the child's needs under the Act. Since a free appropriate public education was available to Kelly McNair, the facts in *Burlington* are easily distinguishable and our reasoning is completely in accord.

Plaintiffs urge this Court to consider the decision of the New York State Educational Agency in *In The Matter of the Board of Education of the City School District of the City of New York,* 1984–85 E.H.L.R. 506:309 (New York, 1914) which ruled on the extent of a school district's obligation under 34 C.F.R. §§ 300.403 and 300.452. The ruling in that case, while not binding on this Court, also supports our decision that the school district is obligated to make available those services which are related to the special education provided by the state notwithstanding the child's enrollment by the parents in a facility other than the schools of the local school district. Beyond that point, however, and for the reasons expressed in this opinion, this Court does not agree with the agency's interpretation of the regulations at issue. The United States Supreme Court has recognized, in the context of the education of the handicapped, that "[a]lthough an agency's interpretation of the statute under which it operates is entitled to some deference, 'this deference is constrained by our obligation to honor the clear meaning of a statute, as revealed by its language, purpose, and history.'" *Southeastern Community College v. Davis,* 442 U.S. 397, 411, 99 S.Ct. 2361, 2369, 60 L.Ed.2d 980 (1979) citing *Teamsters v. Daniel,* 439 U.S. 551, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979).

Here, the Court finds that the language, purpose and history of the Act do not reveal an intention to impose upon the local educational agencies the obligation advanced by plaintiffs. A statute imposing such a duty could easily have been fashioned by Congress. The United States Supreme Court further explained in *Pennhurst State School and Hospital v. Halderman,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed. 2d 694 (1981), that "[t]he case for inferring intent is at its weakest where, as here, the rights asserted impose *affirmative* obligations on the states to fund certain services, since we may assume that Congress will not implicitly attempt to impose massive financial obligations on the States." (Emphasis in original). 451 U.S. at 16, 101 S.Ct. at 1539.

Our decision does not deny this handicapped child the benefit of the Act, but protects the rights of all handicapped children by insuring that the limited funding is applied in a manner which will facilitate, and not inhibit, a state in its efforts to provide free appropriate education and related services to *all* handicapped children as intended by Congress.

Accordingly, the Court finds that under the facts presented, defendants are not required to provide free transportation to Kelly McNair, to reimburse her for her transportation to and from St. Rita's or for boarding her at the private school. The Report and Recommendation of the Magistrate is hereby ADOPTED AS MODIFIED by this Order. As the material facts are not in dispute, defendants are entitled to judgment as a matter of law, and summary judgment is hereby GRANTED in favor of defendants and summary judgment requested by plaintiffs is hereby DENIED.

IT IS SO ORDERED.

## ORDER AND REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE

### Feb. 11, 1987

ROBERT A. STEINBERG, United States Magistrate.

Plaintiffs James McNair, Mary McNair, and Kelly McNair brought this action pur-

suant to 20 U.S.C. § 1400, et seq., the Education of the Handicapped Act, (the Act). They allege that defendants have violated the Act, the federal regulations thereunder (34 C.F.R. §§ 300.403, 300.-451(b), and 76.654), and Ohio Revised Code Ann. Ch. 3323 (Page 1985), which incorporates the Act into Ohio law, by refusing to provide free transportation to and from a private school for Kelly McNair, a hearing-impaired elementary student. Jurisdiction is premised on 28 U.S.C. § 1331 and 20 U.S.C. § 1415(e)(4). This matter is before us on defendants' motion for leave to file a third-party complaint, plaintiffs' motion for leave to file an amended complaint, plaintiffs' motion for summary judgment, and defendants' cross-motion for summary judgment. (Docs. 10, 13, 14, and 16).

## BACKGROUND

James and Mary McNair are the parents of Kelly McNair. Defendants are Louis Cardimone, Superintendent of Oak Hills Local School District, and the Oak Hills Local School District Board of Education (School District). The following facts are not in dispute:

Kelly McNair is an eight-year old elementary school student who has a hearing impairment which entitled her to a free appropriate public education under the Act. Defendants provided Kelly with special education classes during the 1982–83, 1983–84 and 1984–85 school years. James and Mary McNair enrolled Kelly at St. Rita's School for the Deaf (St. Rita's), a non-public school, for the 1985–86 school year.

The McNair's provided daily transportation for Kelly to and from St. Rita's from the date of her enrollment until December 2, 1985, when they lost the use of their automobile. Kelly was then enrolled as a residential student at St. Rita's. No evidence was offered as to whether residence there was less expensive than transportation, or whether the decision to have her remain there was based on other factors. From December 2, 1985 to the present, she has lived at St. Rita's five days a week while school is in session. Her parents transport her to and from St. Rita's on weekends.

The School District declined to provide free transportation to and from St. Rita's for Kelly, pursuant to a resolution adopted on November 20, 1984. In that resolution, the School District found that transporting the students listed therein, including Kelly, was impractical, and that payment in lieu of transportation was appropriate. The resolution directed the Superintendent of Schools to seek the consent of the students' parents for payment in lieu of transportation. If a parent did not consent to the determination that transportation was impractical, the matter was to be submitted to the Superintendent of Public Instruction for fact finding and mediation. The McNair's did not consent to payment in lieu of transportation, but fact finding and mediation was not thereafter conducted by the Superintendent of Schools.

The McNair's subsequently sought and obtained a "Due Process Hearing" with the Hamilton County Office of Education concerning Kelly's right to free transportation. On January 7, 1985, the Office issued a decision requiring the School District to provide free transportation to and from St. Rita's for Kelly. On review by the state level referee, the hearing officer's decision was overturned and the School District's refusal to provide actual transportation to Kelly McNair was upheld.

Plaintiffs seek declaratory and injunctive relief requiring the School District to provide free transportation for Kelly, and reimbursement for the costs they have incurred in transporting her to and from St. Rita's and boarding her at the school.

Defendants contend that the Court lacks subject matter jurisdiction over this case because transportation is not a service tailored to meet the needs of Kelly's particular handicap. They claim that even if the Court were to find that it had subject matter jurisdiction over the case, the School District is not required to provide free transportation to Kelly, since state law does not require the same. Finally, defendants contend that because Kelly is not entitled to free public transportation, plaintiffs

are not entitled to reimbursement for transporting her to and from St. Rita's or for boarding her at the school.

### The Court Has Subject Matter Jurisdiction Over This Case

Title 20 U.S.C. § 1415(a) provides that certain educational agencies or units which receive assistance under that subchapter shall establish and maintain procedures to assure that handicapped children and their parents are guaranteed procedural safeguards with respect to the provision of free appropriate public education by such agencies and units. Whenever a parent registers a complaint with respect to any matter relating to the provision of a free appropriate public education, the parents are entitled to an impartial due process hearing, which shall be conducted by the educational agency or unit, and the right to appeal the decision to the state educational agency. 20 U.S.C. § 1415(b)(2) and (c). A party aggrieved by the findings and decision under subsection (c) has the right to bring a civil action with respect to the complaint presented in a district court of the United States. The United States District Courts have jurisdiction of actions brought under § 1415, without regard to the amount in controversy. 20 U.S.C. § 1415(e)(4).

Plaintiffs allege that they have been aggrieved by a determination of a state educational agency regarding provision of a free appropriate public education, which includes related services (20 U.S.C. § 1401(18); 34 C.F.R. § 300.4), to Kelly McNair. They bring this action with respect to their complaint presented to that agency. Accordingly, § 1415 vests jurisdiction over the complaint in this Court.

### Leave to File the Amended Complaint is Granted

Plaintiffs have moved the Court for leave to amend the complaint pursuant to Fed.R. Civ.P. 15(a), in order to request additional relief. Fed.R.Civ.P. 15(a) provides that leave to amend the complaint shall be freely given when justice so requires. Because the additional damages which plaintiffs seek arose after the initial complaint was filed, and because defendants will not be prejudiced by amendment of the complaint, leave to amend the complaint is GRANTED.

### Leave to File the Third–Party Complaint is Granted

Defendants seek leave to file a third-party complaint against Franklin B. Walter, Superintendent of Public Instruction, Ohio State Board of Education, and against the Ohio State Board of Education. Defendants contend that under Ohio Revised Code Ann. § 3323 (Page 1982), the named third-party defendants determine who is eligible for free public transportation, which decision is binding on defendants. In the event judgment is rendered in favor of plaintiffs, defendants seek joint and separate indemnification and contribution from the third-party defendants.

Pursuant to Fed.R.Civ.P. 14(a), at any time after the commencement of an action, a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him. Therefore, leave to file the third-party complaint is GRANTED. However, if the district judge adopts this report and recommendation, the issue of whether a third party is liable to defendants for all or part of plaintiff's claim will be moot.

### OPINION

A motion for summary judgment should be granted only if the affidavits, pleadings, and admissions demonstrate that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56. See *Smith v. Hudson,* 600 F.2d 60 (6th Cir.), *cert. denied,* 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979). The burden is on the movant to establish conclusively that no genuine factual dispute exists. *Id.* at 63. The Court must read the evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Id.;* See also *Adickes v. Kress & Co.,* 398 U.S. 144, 157, 158–59, 90 S.Ct. 1598, 1608, 1609, 26 L.Ed.2d 142 (1970); *United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per

curiam). The material facts in this case are not in dispute. Thus, summary judgment is appropriate.

In an action brought under the Act, the district court shall receive the records of the administrative proceedings, hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, grant such relief as the Court determines is appropriate. 20 U.S.C. § 1415(e)(2). In rendering its decision, the court must determine 1) whether the state complied with the Act's procedural requirements, and 2) whether the state has satisfied the Act's substantive requirements. *Roncker on Behalf of Roncker v. Walter*, 700 F.2d 1058, 1061–62 (6th Cir. 1983), *cert. denied, Cincinnati City School District Board of Education v. Roncker*, 464 U.S. 864, 104 S.Ct. 196, 78 L.Ed.2d 171 (1983), citing *Bd. of Ed. of the Hendrick Hudson Central School District v. Rowley*, 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). The standard of review for the latter is *de novo*, with due weight given to the state's administrative proceedings. *Id.* at 1062; *Janzen v. Knox County Bd. of Ed.*, 790 F.2d 484, 486 (6th Cir.1986), *citing Roncker*, 700 F.2d 1058, and *Rowley*, 458 U.S. at 205–07, 102 S.Ct. at 3050–51.

### The State Complied With the Act's Procedural Requirements

The state administrative proceedings in this case consisted of the due process hearing conducted by an impartial hearing officer and the review of the hearing officer's decision by a referee at the state level of review. The hearing officer stated that his decision rested on whether defendants had complied with Ohio Revised Code Ann. § 3327.01. The officer determined that Kelly met the time and distance requirements of § 3327.01, which requires the School District to provide actual transportation to private school students who meet the statute's requirements, until a School District's determination that actual transportation is impractical is confirmed by the Superintendent of Public Instruction. The officer further found that pursuant to the federal regulations formulated under the

Act, the School District must provide the same benefits to handicapped children attending private schools as are provided to handicapped children attending public schools, and that such services include transportation to and from school for those who meet the requirements of § 3327.01. Accordingly, the officer determined that pending confirmation of the School District's decision not to provide actual transportation on the ground that such transportation was impractical, the School District was obligated to provide such transportation to Kelly McNair. The officer did not determine whether transportation was a related service under 20 U.S.C. § 1401(17).

Upon review of the hearing officer's decision, the referee found that the case before him did not involve the issue of a refusal of the School District to provide transportation services to a private school student, since the School District had offered payment in lieu of transportation. The referee determined that Kelly had no right to transportation under Ohio Revised Code Ann. § 3327.01, since new evidence submitted subsequent to the informal due process hearing established that she did not meet the time requirements of that provision. Thus, the referee determined that Kelly had no right to physical transportation services to her chosen private school which could be determined or enforced in an impartial due process hearing pursuant to Ohio Revised Code Ann. Ch. 3323 and the Act. The referee did not determine whether transportation was a related service under § 1401(17).

Plaintiffs do not allege that the state failed to comply with the procedural requirements of the Act set forth in 20 U.S.C. § 1415, and the record reflects that it did so comply. Therefore, the only issue before us is whether the state complied with the Act's substantive requirements.

### The State Complied With the Act's Substantive Requirements

In determining whether the State has complied with the substantive requirements of the Act, this Court must undertake a *de novo* review, according due weight to the findings issued in the state proceedings.

Pursuant to 20 U.S.C. § 1401(1), the term "handicapped children" includes the hard of hearing and deaf, who require special education and related services by reason of their handicaps. If a handicapped child has available to her a free appropriate public education, and her parents choose to place her in a private school, the public agency is not required by the Act to pay for the child's education at the private school. 34 C.F.R. § 300.403. However, the public agency must make services available to the child as provided under 34 C.F.R. §§ 300.-450–460. *Id.* § 300.452(a) requires that each local educational agency provide special education and related services designed to meet the needs of private school handicapped children residing in the jurisdiction of the agency. The term "related services" is defined as:

> ... transportation, and such developmental, corrective, and other supportive services (including speech pathology and audiology, psychological services, physical and occupational therapy, recreation, and medical and counseling services, except that such medical services shall be for diagnostic and evaluation purposes only) as may be required to assist a handicapped child to benefit from a special education, and includes the early identification and assessment of handicapping conditions in children. 20 U.S.C. § 1401(17).

Transportation includes travel to and from school. 34 C.F.R. § 300.13(13).

Only those services necessary to permit a handicapped child to benefit from educational instruction specially designed to meet the unique needs of the child must be provided. *Bd. of Ed. of Hendrick Hudson Dist. v. Rowley,* 458 U.S. at 189, 102 S.Ct. at 3042; *Irving Independent School District v. Tatro,* 468 U.S. 883, 104 S.Ct 3371, 82 L.Ed.2d 664 (1984). Not all of the services specified under § 1401(17) may be required for each individual child. (Comment to 34 C.F.R. § 300.13). Furthermore, services other than those listed under § 1401(17) may constitute related services if they are required to assist a handicapped child to benefit from a special education. *Id.*

The issue of whether the School District is required to provide transportation to Kelly McNair as a related service was not addressed at the state administrative hearings, since the School District at the time of those hearings had offered payment in lieu of transportation. However, the parties have subsequently stipulated that the School District's offer of payment in lieu of transportation is no longer available to Kelly. Thus, the first issue this case presents is whether transportation to and from St. Rita's is a related service that the School District must provide.

Although Kelly would require some type of transportation in order to travel to and from St. Rita's were she not residing there, transportation is not necessary to permit her to benefit from educational instruction specially designed to meet her unique needs. Rather, her position is no different from that of any nonhandicapped child who requires transportation to and from school by virtue of the distance of the school from the child's home. The applicable provisions of the Act support the conclusion that transportation services need not be provided to handicapped children who are in no greater need of transportation than nonhandicapped children and do not require special transportation by virtue of their handicaps. Were the term "related services" to be interpreted to include transportation for all handicapped children, regardless of the nature of their handicaps, the qualification under § 1401(17) restricting transportation to that which "may be required to assist a handicapped child to benefit from a special education" would be superfluous. Furthermore, such an interpretation is inconsistent with the comment to 34 C.F.R. 300.13 that those services defined as "related services" may not be required for each individual child covered by the Act. Accordingly, we find that because Kelly McNair does not require transportation by virtue of her handicap, transportation is not a related service under the facts of the present case.

Assuming, *arguendo,* that transportation for Kelly were a related service, the feder-

al regulations are unclear as to whether the School District would be required to pay for the same. Plaintiffs stipulated in the state proceedings, solely for the purposes of those proceedings, that a free appropriate public education was available to Kelly. Plaintiffs indicated at the oral hearing held in connection with this motion that there is some dispute as to whether such an education was available within the School District's jurisdiction. However, the Act imposes no requirement that a free appropriate public education be provided within the jurisdiction of the local school district in which a student resides. Plaintiffs have not alleged that a free appropriate public education was unavailable to Kelly, and defendants have asserted that it was available. Therefore, we must find that the same was available to her. Pursuant to 34 C.F.R. 300.403, since Kelly had available to her a free appropriate public education and her parents chose to place her in a private school, the School District is not required to pay for Kelly's education at the private school. The School District need only make services available to her as provided under § 300.450–460. Section 300.452 requires each local educational agency to provide special education and related services designed to meet the needs of private school handicapped children residing in the jurisdiction of the agency. The question is whether the term "provide" means that the local educational agency need only make related services available to these children should they choose to take advantage of the state's offer of a free appropriate public education, or whether it means the agency must pay for a child's related services if the child chooses to attend a private school.

The Department of Education has indicated that Part B of the Education of the Handicapped Act contains no provision for the distribution of funds directly to the parents of handicapped children or to the private schools which they attend. See Inquiry by Rodney J. Becker, 2 EHLR 211:388 (April 1986). The requirements of the Act differ depending on whether a child is placed in a private school due to the unavailability of a free appropriate public

education, or on the basis of considerations other than the availability of a free appropriate public education. *Id.* Where a free appropriate public education is available, and the parents choose to place their child in a private school, the school district is not required to pay for the child's education, but is only required to (1) have free appropriate public education available to the child should she return to public school, and (2) provide a genuine opportunity for equitable participation by the child in programs funded under Part B of the Act within the jurisdiction served by the local school district. *Id.* The Department of Education's interpretation of the Act supports a finding that although the School District must make a free appropriate public education, including related services, available to all handicapped children residing within its jurisdiction, it need not pay for the same if a handicapped child chooses to attend a private school.

On the other hand, 34 C.F.R. §§ 300.403 and .452 have been interpreted by the New York State Educational Agency to mean that the state must go beyond the offer of an appropriate public school placement and provide related services without requiring a student to forego private school enrollment. See 1984–85 EHLR Dec. 506–309, *In the Matter of the Bd. of Ed. of the City School District of the City of New York.*

We disagree with the latter interpretation of the regulations. We find that § 300.452 can only be interpreted to mean that a local school district need not pay for a child's related services when the child's parents choose to place her in a private school. 20 U.S.C. § 1413(a)(4)(A), the authority for § 300.452, when read in conjunction with § 1413(a)(4)(B), compels this conclusion. Section 1413(a)(4) provides that any state desiring to participate in the federal education for the handicapped program must submit a plan to the appropriate authority that sets forth policies and procedures to assure:

(A) that, to the extent consistent with the number and location of handicapped children in the State who are enrolled in private elementary and secondary

schools, provision is made for the participation of such children in the program assisted or carried out under this subchapter by providing for such children special education and related services; and

(B) that (i) handicapped children in private schools and facilities will be provided special education and related services ... *at no cost to their parents or guardians, if such children are placed in or referred to such schools or facilities by the State or appropriate local educational agency* as the means of carrying out this subchapter or any other applicable law requiring the provision of special education and related services to all handicapped children within such State ... (emphasis added).

If the intent of the Act were to require that handicapped children voluntarily placed in private schools be provided related services at no cost, § 1413(a)(4) would not distinguish between such children and those placed in a private school by the state and specify that only the latter group must receive such services at no cost. Thus, § 1413(a)(4) can only be construed to mean the state must make a special education and related services available to all handicapped children, but need not pay for the same when a handicapped child is voluntarily placed in a private school.

Accordingly, the School District has fulfilled its obligation under § 300.403 to provide related services to Kelly McNair by making a free appropriate public education available to her. Because Kelly's parents chose to enroll her in a private school, defendants are not required under that provision to pay for Kelly's special education and related services at St. Rita's.

The second issue before us is whether the School District's refusal to provide Kelly with free public transportation violates 34 C.F.R. § 76.654. Pursuant to 34 C.F.R. § 300.451(b), a state educational agency must insure that with respect to a handicapped student voluntarily placed in a private school by her parents, the requirements of 34 C.F.R. §§ 76.651–.663 are met. Those provisions apply to programs where

the authorizing statute requires that a state and its subgrantees provide for participation by students enrolled in private schools and establish rules for that participation. Section 76.651 states that a subgrantee shall provide students enrolled in private schools with a genuine opportunity for equitable participation in such programs in accordance with §§ 76.652–76.662. Section 76.654(a) requires that the program benefits that a state agency provides for students enrolled in private schools must be comparable in quality, scope and opportunity for participation to the program benefits that the subgrantee provides for students enrolled in public schools.

Plaintiffs contend that the comparison to be made under the comparable services provision is between services provided privately-placed handicapped students and those available to handicapped children attending public schools. They claim that because Ohio law places no time or distance limitations on transportation for handicapped public school students, the School District is obligated to provide transportation to handicapped private school students, regardless or time or distance of travel. Defendants contend that the comparison § 76.654(a) requires is between the services provided a handicapped private school student and those offered a nonhandicapped private school student. They contend that Kelly is not entitled to transportation under § 76.654 because she does not meet the time and distance requirements governing transportation for private school students under Ohio Revised Code Ann. § 3327.01. We need not resolve the question of which interpretation of § 76.654(a) is correct, or the issue of whether Kelly meets the time and distance requirements of § 3327.01. Rather, we find that § 76.654 does not require the state to pay for Kelly's transportation to and from St. Rita's under either interpretation of § 76.654, regardless of whether she satisfies the requirements of § 3327.01.

Pursuant to § 300.451(b), where the state has established a program providing for the free appropriate public education of handicapped students, an opportunity for

participation in that program by private school students must be extended. For the same reasons discussed in connection with the related services issue, the state fulfills its obligation under § 300.451(b) to comply with § 76.654 when it makes a free appropriate public education available to a private school student should she return to a public school, and provides the student with an opportunity to participate in programs funded under the Act within the jurisdiction served by the local school district. § 76.654 imposes no additional requirement that the state pay for a child's special education and related services when the child's parents decline the free appropriate public education offered by the state and choose to enroll the child in a private school. Because a free appropriate education was made available to Kelly McNair, the School District need not pay for Kelly's transportation to the private school in which her parents have voluntarily placed her.

We find no other basis for holding that the school district's decision to deny free transportation to Kelly McNair violates the applicable provisions of federal law or Ohio Revised Code Ann.Ch. 3323, which incorporates those provisions of federal law into state law. Thus, summary judgment in defendants' favor is warranted.

### ORDER

IT IS THEREFORE ORDERED THAT:

1) Plaintiffs' motion for leave to file amended complaint be GRANTED.

2) Defendants' motion for leave to file third-party complaint is GRANTED.

### RECOMMENDED DECISION

IT IS THEREFORE RECOMMENDED THAT:

1) Plaintiffs' motion for summary judgment be DENIED.

2) Defendants' motion for summary judgment be GRANTED.