Kristy DREHER, Lynn Dreher, and
Chris Dreher, Plaintiffs,

v.

AMPHITHEATER UNIFIED SCHOOL DISTRICT; Arizona State Department of Education; C. Diane Bishop, Superintendent, Defendants.

No. CIV 91–647 TUC RMB.

United States District Court,
D. Arizona,
Tucson Division.

June 10, 1992.

Grant Woods, Atty. Gen., Mariannina E. Preston, Eva K. Bacal, Asst. Attys. Gen., Phoenix, Ariz., for plaintiffs.

Sarah R. Allen, Ariz. Center for Law in the Public Interest, Phoenix, Ariz., Barry Corey, Corey & Farrell, P.C., Tucson, Ariz., for defendants.

## ORDER

BILBY, District Judge.

Before the Court is Defendant C. Diane Bishop's Motion to Dismiss; Plaintiffs' Mo-

tion for Summary Judgment; Defendant Bishop's Cross–Motion for Summary Judgment; and Defendant Amphitheater Unified School District's Cross–Motion for Summary Judgment.

## I.

### A.

Plaintiffs allege the following facts in their Complaint:

Kristy Dreher is a seven year-old student whose parents reside within the boundaries of the Amphitheater Unified School District. Kristy has been profoundly deaf since birth and is considered a "handicapped child," as defined in the Individuals with Disabilities Education Act ("IDEA"). 20 U.S.C. § 1401(a). In August, 1989, the School District developed an Individualized Education Plan ("IEP") for Kristy, pursuant to the IDEA, and determined to place her at the Arizona School for the Deaf and Blind.

Plaintiffs disagreed with the proposed placement, whereupon they requested an impartial due process hearing to demonstrate that the proposed placement would not deprive Kristy of a free appropriate public education commensurate with her abilities and needs. A due process hearing was held over four days in December, 1989 to January, 1990. The sole issue was whether or not the educational placement proposed by the School District provided Kristy with a free appropriate public education, as required by federal law. The hearing officer determined that the School District's proposed placement was appropriate. Plaintiffs appealed to the Arizona Department of Education, who subsequently upheld the hearing officer's decision.

In January, 1990, the Drehers enrolled Kristy at St. Joseph's Institute for the Deaf in St. Louis, Missouri. In September 1990, the Drehers requested that the School District reimburse them for the speech therapy services provided at St. Josephs, and for the costs of such services in the future. The School District refused. On January 16, 1991, Plaintiffs requested a due process hearing to contest the District's denial of reimbursement for speech therapy services. The District refused to schedule a hearing. Plaintiffs then filed an administrative complaint with the Arizona Department of Education, pursuant to 34 C.F.R. § 76.782. On June 7, 1991, the Arizona Department of Education issued a letter of finding, upholding the District's refusal to reimburse the speech therapy costs or to provide a hearing.

### B.

The following is a summary of the hearing officer's decision:

1. ISSUE PRESENTED

Whether the proposed and recommended placement of this child by the school district is an appropriate placement to provide a Free Appropriate Public Education in the Least Restrictive Environment.

2. SUMMARY OF FINDINGS OF FACT

a. Kristy is a five year, eleventh month old child who is hearing impaired with a current profound hearing loss.

b. The parents did research into methods of education for the deaf and became convinced that their goal was for Kristy to be an oral child—to be able to speak.

c. They enrolled Kristy in an oral/auditory program in Phoenix for a two year period. This is not an academic program, but a speech therapy program.

d. After lengthy testing, Amphitheater determined that the oral program was not effective for Kristy, and it was recommended that she be placed in a total communication program ("TC")—this includes both oral methods augmented with sign language.

e. The parents disagreed with this methodology because they did not want Kristy to rely on sign language. The parents believed that Kristy would not learn to speak if placed in a TC program. They then placed Kristy at St. Josephs's School in St. Louis. This school uses only the oral method.

f. There was conflicting expert testimony concerning whether Kristy would advance or fall behind if taught by only a

strictly oral approach. However, there was also testimony that Kristy had not advanced quickly enough with the oral program.

### 3. DECISION AND ORDER

a. The proposed placement is not a placement of manual communication, but a placement of augmented communication so that the child may progress with the development of the necessary language that is needed in order to progress academically. There was evidence that an oral emphasis was not a part of the IEP in the proposed placement; only that sign language be incorporated.

b. The basic disagreement between the parents and the school district is not whether this child should become oral and learn to speak, but in the methodology that will be used in the education of this child to reach that goal.

c. "Parents have no right under Education for All Handicapped Children Act to compel school district to provide specific program or to employ specific methodology in providing education for their handicapped child." *Lachman v. Illinois State Board of Education*, 852 F.2d 290 (7th Cir.1988), *cert. denied*, 488 U.S. 925, 109 S.Ct. 308, 102 L.Ed.2d 327 (1988).

d. Methodology is left to the determination of the school district in fulfilling the goals of the IEP and in this case the goals definitely show an oral strengthened base.

e. However, the law does allow a parent who has specific goals to remove the child from the public schools and place that child in a private placement according to 34 C.F.R. § 300.403(a). *However, the public agency, in this case the school district, is not required to pay for the child's education.*

This decision was subsequently appealed by the Drehers. The appeals board reviewed the procedures followed by the hearing examiner, and concluded that there was no due process violation. The appeals board then made the following conclusions of law:

a. "Free appropriate education" ("FAPE") is defined as special education and related services which are provided at public expense, meet State educational agency standards, and are provided in conformity with the child's required IEP. This includes "educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child to benefit from the instruction." *Bd. of Education v. Rowley*, 458 U.S. 176, 189, 102 S.Ct. 3034, 3042, 73 L.Ed.2d 690 (1982).

b. A child is receiving the proper FAPE when personalized instruction is provided to permit the child to benefit from the instruction.

c. The Drehers failed to show evidence that Kristy would fail to benefit from instruction as set forth in the IEP. On the contrary, the evidence and testimony indicated that the IEP is specifically designed to meet the current needs of Kristy such that she will benefit from the instruction.

d. This case is like *Lachman v. Illinois State Bd. of Educ., supra,* where the court determined that the disagreement between the parents and the school district concerned which method was most appropriate for facilitating the education of the child. The court in *Lachman* concluded that the district's IEP was based on accepted, proven methodology for facilitating the early primary education of a profoundly hearing impaired child. The *Lachman* court found that the IEP provided for a FAPE.

e. The appeals board distinguished *Visco v. School Dist. of Pittsburgh,* 684 F.Supp. 1310 (W.D.Pa.1988), where the court upheld the child's desire to attend an oral communication school as the appropriate placement for the child. In *Visco*, the court based its decision on the child's previous enrollment in the oral school, where the child had made satisfactory progress.

The court also took into consideration the fact that the child's parents are also hearing impaired and therefore, the child is not spoken to in the home. In this case, the appeals board concluded that Kristy has not made satisfactory progress, and her home circumstances were different than those found in *Visco.*

The appeals board upheld the findings of fact, conclusions of law and order of the hearing officer.

## II.

### A. STANDARD OF REVIEW UNDER THE INDIVIDUALS WITH DISABILITIES EDUCATION ACT

The IDEA permits "[a]ny party aggrieved by the findings and decision" of the state administrative hearings "to bring a civil action [in] any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy." 20 U.S.C. § 1415(e)(2). This Court's inquiry into suits brought under § 1415(e)(2) is twofold:

First, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits? If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more.

*Bd. of Educ. of Hendrick Hudson Central School Dist. v. Rowley,* 458 U.S. 176, 206–07, 102 S.Ct. 3034, 3051, 73 L.Ed.2d 690 (1982). Plaintiffs do not contend that Defendants have failed to comply with the procedures set forth in the Act when it developed Kristy's IEP. Plaintiffs' belief that the IEP is not reasonably calculated to enable Kristy to receive educational benefits lead them to remove Kristy from public school.

■ In reviewing the Complaint, the Act provides that a court "shall receive the record of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(e)(2); *see also Rowley,* 458 U.S. at 205, 102 S.Ct. at 3050. While the Act directs the Court to weigh the evidence based on a "preponderance of the evidence" standard, this does not grant the Court authority to substitute its "own notions of sound educational policy for those of the school authorities." *Id.* at 206, 102 S.Ct. at 3051; *see also Bd. of Educ. of Community Consol. School Dist. No. 21 v. Illinois State Bd. of Educ.,* 938 F.2d 712, 715 (7th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 957, 117 L.Ed.2d 124 (1992).

This Court lacks specialized knowledge and experience in the realm of educational policy. It is not this Court's role to overturn a State's decision that was reached in accordance with § 1415(e)(2). *Id.* 458 U.S. at 207–08, 102 S.Ct. at 3051–52; *see also* 20 U.S.C. §§ 1400–1485, 34 C.F.R. part 300. "In assuring that the requirements of the Act have been met, courts must be careful to avoid imposing their view of preferable educational methods upon the States." *Rowley,* 458 U.S. at 207, 102 S.Ct. at 3051. "The primary responsibility for formulating the education to be accorded a handicapped child, and for choosing the educational method most suitable to the child's needs, was left by the Act to state and local educational agencies in cooperation with the parents or guardian of the child." *Id.*

### B. THE FAPE

■ The requirements for a Free Appropriate Public Education ("FAPE") are defined in the Code of Federal Regulations ("C.F.R."):

[F]ree appropriate public education means special education and related services which:

(a) are provided at public expense, under public supervision and direction, and without charge

(b) meet the standards of the State educational agency including the requirements of this part,

(c) include pre-school, elementary school, or secondary school education in the state involved, and

(d) are provided in conformity with an individualized education program which meets the requirements under Sections 300.430—300.349 of subpart C.

34 C.F.R. § 300.4. A state satisfies the requirement to provide a FAPE by providing instruction and services, at public expense, that meet the State's educational standards and comport with the child's IEP. *Rowley,* 458 U.S. at 203, 102 S.Ct. at 3049. "An 'appropriate' public education does not mean the absolutely best or 'potential-maximizing' education for the individual child." *Gregory K. v. Longview School Dist.,* 811 F.2d 1307, 1314 (9th Cir. 1987) (citing *Rowley,* 458 U.S. at 197 n. 21, 102 S.Ct. at 3046 n. 21). Rather, "[t]he states are obliged to provide a 'basic floor of opportunity' through a program 'individually designed to provide educational benefit to the handicapped child.'" *Id.* (citing *Rowley,* 458 U.S. at 201, 102 S.Ct. at 3048).

Defendants have provided Kristy with the opportunity to receive a public education designed for her unique needs. The impartial hearing officer heard extensive testimony from both the School District and parents. In a lengthy and well-reasoned opinion, the officer found that the educational program and speech therapy services were specifically designed to meet Kristy's current needs. The hearing officer specifically found that the aural/oral method of speech therapy would not facilitate Kristy's ability to learn and receive an education.

The IEP proposed by the School District and upheld by the hearing officer is based upon an accepted, proven methodology for facilitating speech communication of profoundly deaf students. This Court must grant deference to the sound judgment of the state educational agency. *Wilson v. Marana Unified School Dist. of Pima County,* 735 F.2d 1178, 1183 (9th Cir.1984).

This Court concludes that Defendants have fulfilled their obligation to provide an appropriate FAPE to Kristy.

Plaintiffs, however, do not seek a reversal of the hearing officer's decision. Rather, Plaintiffs request this Court to order Defendants to reimburse them for the cost of Kristy's speech therapy services while she attends St. Josephs.

## C. PRIVATE SCHOOL PLACEMENT

A handicapped child may be referred to a private school or facility by a public agency or by the child's parents. *See* 34 C.F.R. § 300.400–452. Where an appropriate FAPE has been provided and a handicapped child is unilaterally placed in a private school at the choice of the parents, school officials are not relieved of their responsibility to that child. The regulations provide:

If a handicapped child has available a free appropriate public education and the parents choose to place the child in a private school or facility, the public agency is not required by this part to pay for the child's education at the private school or facility. *However, the public agency shall make services available to the child as provided in Sections 300.450 through 300.460.*

34 C.F.R. § 300.403 (emphasis added).[1] In particular, the obligations of the State educational agency ("SEA"), represented by Defendant Bishop, are set forth in the regulations:

The State education agency shall insure that—

(a) To the extent consistent with their number and location in the State, provision is made for the participation of private school handicapped children in the program assisted in or carried out under this part *by providing them with special education and related services;* and

(b) The requirements in 34 CFR 76.651–76.663 of EDGAR are met.

---

1. "[P]rivate school handicapped children means handicapped children enrolled in private schools or facilities other than handicapped children covered under 300.400 through 300.-

402." 34 C.F.R. § 300.450. Sections 300.400–300.402 refer to handicapped children who are placed in or referred to a private school or facility by a public agency.

34 C.F.R. § 300.451 (emphasis added). Likewise, the obligations of the School District, referred to as the local educational agency ("LEA") arise under 34 C.F.R. § 300.452:

> (a) Each local educational agency shall provide special education and related services designed to meet the needs of private school handicapped children residing in the jurisdiction of the agency.

Moreover, the program benefits provided to a student enrolled in private school "must be comparable in quality, scope, and opportunity for participation to the program benefits" provided for students enrolled in public schools. 34 C.F.R. § 76.-654(a). "[These] sections merely make clear that notwithstanding a unilateral placement of a child in a private school, the public agency is not relieved of *all* responsibility for the child, but must provide the handicapped child who is unilaterally placed in the private school with special education and related services where necessary." *Work v. McKenzie*, 661 F.Supp. 225, 229 (D.D.C.1987) (emphasis in original).

The requirement to provide Kristy with "special education and related services" does not resolve the issue of whether the Act also requires Defendants to pay for such services when they are provided at the private school. The parties and this Court agree that speech therapy is a "related service" covered under the IDEA.[2] However, the parties disagree as to what Defendants must do in order to fulfill their obligations under the IDEA and its regulations. In this instance, Defendants do "provide" Kristy with speech therapy services at the Arizona School for the Deaf and Blind. Defendants contend that this service remains open to Kristy, and therefore they have fulfilled their obligation under the IDEA. Plaintiffs disagree with Defendants' reading of the regulations.

Plaintiffs contend that because Kristy is in St. Louis, she cannot both attend St. Josephs and receive speech therapy here in Arizona, and thus, Defendants have effectively denied Kristy the right to receive such services. Plaintiffs urge the Court to find an obligation on the part of the LEA and SEA to pay for "related services" while a child attends private school outside the State of Arizona.

■ To interpret the IDEA, the starting point must be the plain language of the statute and the related regulations. *United States v. Weber Aircraft Corp.*, 465 U.S. 792, 798, 104 S.Ct. 1488, 1492, 79 L.Ed.2d 814 (1984). The Court must assume that the legislative purpose is expressed by the ordinary meaning of the words used. *Kosak v. United States*, 465 U.S. 848, 853, 104 S.Ct. 1519, 1523, 79 L.Ed.2d 860 (1984). Where an appropriate FAPE has been provided and the parents choose to place their child in private school, the public agency "shall make services *available* to the child." 34 C.F.R. § 300.-403 (emphasis added). In particular, the regulations provide that the SEA must ensure that "provision is made for the participation of private school handicapped children ... by *providing* them with special education and related services." 34 C.F.R. § 300.451 (emphasis added); and the LEA must *"provide* special education and related services" to these children. 34 C.F.R. § 300.452 (emphasis added).

■ Under the plain language of the above regulations, there is no indication that the State and local agency's obligation to "make services available" and to "provide" such services equates to an obligation to pay for related services where the school has an appropriate alternative. *Work*, 661 F.Supp. at 229. The regulations simply do not state that the LEA and SEA must "pay for" related services when parents unilaterally place their child in private school out-

---

2. 20 U.S.C. § 1401(17) provides:

The term "related services" means transportation, and such developmental, corrective, and other supportive services (including pathology and audiology, psychological services, physical and occupational therapy, recreation, and medical and counseling services, except that such medical services shall be for diagnostic and evaluation purposes only) as may be required to assist a handicapped child to benefit from special education, and includes the early identification and assessment of handicapping conditions in children.

side the State, and the Court shall not read such a requirement into them. *See Goodall v. Stafford County School Bd.*, 930 F.2d 363, 367 (4th Cir.1991) (quoting *McNair v. Cardimone*, 676 F.Supp. 1361, 1372 (S.D. Ohio 1987), *aff'd on other grounds*, 872 F.2d 153 (6th Cir.1989)), *cert. denied*, —— U.S. ——, 112 S.Ct. 188, 116 L.Ed.2d 149 (1991).

Moreover, the Court must not overlook the Congressional intent behind the Act. The purpose, as set out in the Act, is "to assure that all children with disabilities have *available* to them ... a free appropriate public education which emphasizes special education and related services designed to meet their unique needs[.]" 20 U.S.C. § 1400(c) (1990) (emphasis added); *see also Rabinowitz v. New Jersey State Bd. of Educ.*, 550 F.Supp. 481 (D.C.N.J.1982) (language of chapter evinces congressional intent to provide education to all handicapped children situated within state); *J. on behalf of J. v. Special School Dist. No. 1*, 478 F.Supp. 418 (D.C.Minn.1979) (chapter enacted to insure all handicapped children afforded a free appropriate public education). The educational agency's obligation extends no further than to provide "*a genuine opportunity* for equitable participation" in public programs. 34 C.F.R. § 76.651(a)(1) (emphasis added). This Court also finds the Supreme Court's review of the policies and objectives of the Act to be of guidance:

> In explaining the need for federal legislation, the House Report noted that 'no Congressional legislation has required a precise guarantee for handicapped children, i.e. a basic floor of opportunity that would bring into compliance all school districts with the Constitutional right of equal protection with respect to handicapped children.' [H.R.Rep. No. 94–332 (1975)]. Assuming that the Act was designed to fill the need identified in the House Report—that is, to provide a 'basic floor of opportunity' consistent with equal protection—*neither the Act nor its history persuasively demonstrates that Congress thought that equal protection required anything more than equal access.* Therefore, Congress' desire to pro-vide specialized educational services, even in furtherance of 'equality,' cannot be read as imposing any particular substantive educational standard upon the States.

*Rowley*, 458 U.S. at 200, 102 S.Ct. at 3047–48 (emphasis added).

In enacting the IDEA, Congress further recognized the limited financial resources available to State and local educational agencies to develop programs for the disabled. *See* 20 U.S.C. § 1400(b)(9) (1990). This Court does not read the Act to require the SEA and LEA to use public funds to subsidize private programs outside the State where the state program is appropriately designed for a handicapped child and is made available at no cost. To impose such an obligation would drain funds from the appropriate public program, further taxing an already demanding obligation placed on government.

In light of the policies set forth by the Act, it is clear that it simply provides students with disabilities an *opportunity* to receive a public education, along with needed services, taking into account the agencies' limited resources. The Court interprets the Act to mean that an LEA need not pay for a child's related services when the child's parents choose to place her in a private school outside the State. Here, Defendants have developed and do provide a speech therapy service at the Arizona School for the Deaf and Blind. The speech therapy is both consistent with Kristy's IEP and is presently available to her. The Court finds that Kristy is provided "*a genuine opportunity* for equitable participation" in this program, 34 C.F.R. § 76.-651(a)(1) (emphasis added), thereby fulfilling Defendants' responsibilities under the Act. Plaintiffs' claim for reimbursement of past and future costs of speech therapy services is denied.

## D. RELATED SERVICES MUST BE CONSISTENT WITH IEP

■ Were this Court to recognize an obligation to pay for "related services" where a handicapped child attends private school, Plaintiffs could still not prevail in this case.

Where the "related service" requested by the parents is not "designed to meet ... unique needs" of the child, the educational agency need not provide such a service. *See Irving Independent School Dist. v. Tatro,* 468 U.S. 883, 894, 104 S.Ct. 3371, 3378, 82 L.Ed.2d 664 (1984) (only services necessary to aid handicapped child to benefit from special education need be provided); *McNair v. Oak Hills Local School Dist.,* 872 F.2d 153, 156 (6th Cir.1989). Defendants are not bound by the Dreher's wishes to obtain speech therapy services based on an aural/oral method of teaching. "[P]arents, no matter how well-motivated do not have a right ... to compel a school district to provide a specific program or employ a specific methodology in providing for the education of their handicapped child." *Lachman v. Illinois State Bd. of Education,* 852 F.2d 290, 297 (7th Cir. 1988).

The district does have the power to provide a handicapped child with an education which they consider more appropriate than that proposed by the parents. *Wilson,* 735 F.2d at 1182; *accord Roland M. v. Concord School Comm.,* 910 F.2d 983, 993 (1st Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1122, 113 L.Ed.2d 230 (1991) (issue is whether school district's IEP struck an adequate and appropriate balance, not whether better or worse program existed); *Gregory K. v. Longview School Dist.,* 811 F.2d 1307, 1314 (9th Cir.1987) (appropriate placement proposed by school district must be upheld even if family prefers another alternative); *cf. Bd. of Educ. of Community Consol. School Dist. No. 21 v. Illinois State Bd. of Educ.,* 938 F.2d at 717, *cert. denied,* — U.S. —, 112 S.Ct. 957, 117 L.Ed.2d 124 (1992) (parental hostility may be considered by hearing examiner); *Visco v. School Dist. of Pittsburgh,* 684 F.Supp. 1310 (W.D.Pa.1988) (oral method more appropriate in light of child's unique status of living in deaf environment).

Nowhere does the Act require the state to provide related services for anything other than what the state has designed and offered as "special education and related services." The hearing officer listened to testimony and made a reasoned determination that the "total communication" method of speech therapy was most appropriate for Kristy. The appeals board affirmed. There is no evidence to indicate that the aural/oral method is better for Kristy's needs than the method proposed under the present IEP. The Court has no basis upon which to second-guess the hearing examiner's decision, and declines to do so.

### III.

The extent and nature of the related services provided to Kristy is a decision left to the LEA. The Regulations provide:

> Disagreements between a parent and a public agency regarding the availability of a program appropriate for the child, and the questions of financial responsibility, are subject to the due process procedures under Sections 300.500–300.514 of Subpart E.

34 C.F.R. § 300.403(b). The issue to be determined by the hearing officer in the due process procedures is the "availability of a program appropriate for the child." The question of financial responsibility "is not a determination separate from that of appropriateness, but one derivative of it." *Davis v. Dist. of Columbia Bd. of Educ.,* 530 F.Supp. 1209, 1214 (D.D.C.1982). "In other words, whether the defendants must pay for any given placement depends upon the unavailability of a public school placement for the child, i.e., the lack of appropriateness." *Id.* In assessing the appropriateness of the IEP developed for Kristy, the hearing officer heard testimony and reviewed evidence concerning the appropriate mode of speech therapy for Kristy. The hearing officer developed a detailed factual record and provided a thorough, well-reasoned legal analysis explaining the appropriateness of the FAPE. At both the hearing and appeal, Plaintiffs were provided the opportunity to be heard. The hearing officer concluded that the "total communication" method of speech therapy was most appropriate for Kristy. The appeals board affirmed.

Here, Plaintiffs were not provided a separate due process hearing on the issue of reimbursement for related services at the

private school. Such a hearing is unnecessary where the hearing examiner has already determined that an appropriate program at the public school had been made available to the child. Due process has been met in this case.

## IV.

Defendants assert that Plaintiffs have failed to exhaust their administrative remedies. According to Defendants, IEPs are formulated for Kristy for the 1990–91 and 1991–92 school years, which have provided for placement at the Arizona School for the Deaf and Blind. Plaintiffs have not requested a due process hearing with respect to either of these IEPs, and therefore Defendants contend that Plaintiffs have failed to exhaust their administrative remedies. Defendants further contend that their disagreement and subsequent hearings over placement at the ASDB is insufficient to exhaust.

In response, Plaintiffs contend that they have sought reimbursement for the past and future speech therapy for Kristy at her private school outside the state. Defendants refused to honor this request, and likewise refused to provide Plaintiffs with a hearing on the issue. Plaintiffs subsequently filed an administrative complaint with the ADE, whereupon ADE upheld the refusals of Defendants to provide reimbursement for speech therapy or a due process hearing regarding its refusal. Therefore, Plaintiffs assert, Defendants have prevented them from exhausting their administrative remedies.

"[T]he Act establishes various procedural safeguards that guarantee parents both an opportunity for meaningful input into all decisions affecting their child's education and the right to seek review of any decisions they think inappropriate." *Honig v. Doe,* 484 U.S. 305, 311–12, 108 S.Ct. 592, 598, 98 L.Ed.2d 686 (1988). A party seeking review must exhaust administrative remedies. 20 U.S.C. § 1415(e)(2); *Honig,* 484 U.S. at 326–27, 108 S.Ct. at 606 ("judicial review is normally not available ... until all administrative proceedings are completed"). However, parents may by-pass the administrative process where exhaustion would be futile or the administrative remedies available would be inadequate. *Id.* at 327, 108 S.Ct. at 606; *Smith v. Robinson,* 468 U.S. 992, 1014, n. 17, 104 S.Ct. 3457, 3469, n. 17, 82 L.Ed.2d 746 (1984) (citing cases); *Kerr Center Parents Assoc. v. Charles,* 897 F.2d 1463, 1469 (9th Cir.1990). "To hold otherwise would impose an unnecessary and unjustified burden on the parents and guardians of handicapped children." *Kerr,* 897 F.2d at 1470. The burden in this case rests with the parents to demonstrate the futility or inadequacy of review. *Honig,* 108 S.Ct. at 606.

Under these circumstances, this Court finds that failure to exhaust administrative remedies is not a bar to this action. After Plaintiffs were refused a due process hearing, they had no recourse but to seek judicial relief. *See Kerr,* 897 F.2d at 1470. Furthermore, Plaintiffs attempts to seek further review would have been useless, given that Amphitheater had already determined that the oral/aural method of speech therapy was inconsistent with Kristy's IEP.

## V.

Because the Court finds that Plaintiffs have no claim for reimbursement of speech therapy services while Kristy attends private school out of the State, the defenses of res judicata, estoppel, waiver, laches, applicability of the stay-put provisions, and the appropriateness of granting injunctive relief need not be addressed.

Accordingly, the Court finds in favor of DEFENDANTS and against PLAINTIFFS in this case. IT IS HEREBY ORDERED that Defendant Bishop's Motion to Dismiss, Defendant Bishop's Cross–Motion for Summary Judgment, and Amphitheater Unified School District's Cross–Motion for Summary Judgment are GRANTED. IT IS FURTHER ORDERED that Plaintiffs' Motion for Summary Judgment is DENIED.