927 F.Supp. 1214 (1996)
Daniel and Margaret FOLEY, as parents and next friend of Clare Foley, Plaintiffs,
v.
The SPECIAL SCHOOL DISTRICT OF ST. LOUIS COUNTY, Defendant.
No. 4:95 CV 448 DDN.
United States District Court, E.D. Missouri, Eastern Division.
March 29, 1996.
*1215 Michael H. Finkelstein, Missouri Protection & Advocacy Services, Jefferson City, MO, for plaintiffs.
Celynda L. Brasher, Peper and Martin, St. Louis, MO, James G. Thomeczek, St. Louis, MO, for defendant.

MEMORANDUM
NOCE, United States Magistrate Judge.
This action is before the Court upon the motion of the defendant for summary judgment under Rule 56(c), Federal Rules of Civil Procedure. The parties have consented to the exercise of authority by a United States Magistrate Judge under 28 U.S.C. § 636(c)(3).
Plaintiffs are Daniel and Margaret Foley, the parents of Clare Foley. They seek relief under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-1485. Plaintiffs seek judicial review of a three-member due process panel hearing held pursuant to 20 U.S.C. § 1415 and Missouri Revised Statutes § 162.961. Plaintiffs allege that the Special School District of St. Louis County ("SSD") is required under the IDEA to provide certain educational and related services to their daughter, Clare Foley ("Clare") at St. Peter's Catholic School ("St. Peter's"). They ask the Court to reverse the decision of the three-member hearing panel, find that SSD has violated the law by failing to provide special education services to Clare *1216 at St. Peter's, order that such services as requested be provided, and award attorneys' fees and costs to plaintiffs.
The SSD argues that the IDEA does not require the SSD to provide Clare with the services requested at St. Peter's, in that the SSD has offered Clare a free appropriate public education in the public school setting, and plaintiffs have elected unilaterally to place Clare in a private parochial school. The SSD argues that the United States Constitution and the Missouri Constitution prohibit the SSD from providing the services to Clare on the grounds of the parochial school.
The following facts are undisputed:

FACTS
1. Clare Foley is a female born on October 24, 1986. She is the daughter of Daniel and Margaret Foley. Clare resides in the Kirkwood School District and the Special School District of St. Louis County ("SSD"). Clare has a medical diagnosis of Down Syndrome. Clare's educational diagnosis is mild mentally disabled, with delays in the areas of cognition, adaptive behavior, language, fine motor, and gross motor. (Complaint at ¶¶ 4, 11, 12; Legal File, filed June 23, 1995, at 95).
2. From the age of seven weeks until sometime during the 1992-93 school year, Clare received services from the Belle Center, a private school for students with disabilities located in the City of St. Louis. In June 1991, Clare attended the Belle Center twice a week from 9:00 a.m. to 1:00 p.m. Clare also attended Kirkwood Baptist Preschool one morning per week. (Complaint at ¶ 13; Legal File at 95).
3. About June 1991, Clare's mother sought information about receiving educational services from the SSD. Mrs. Foley completed an SSD "Early Childhood Special Education Referral Form" on or about June 22, 1991. Becky Hughes, Clare's program director at the Belle Center, completed the "Preschool Section" of the referral form in September 1991. The "Screening Section" of the referral form was completed on September 21, 1991, by Molly Dunkin, a parent educator from the Kirkwood R-VII School District. (Complaint at ¶ 15; Legal File at 95.)
4. The Belle Center completed an individual treatment plan ("ITP") for Clare on October 15, 1991, after the SSD requested that Mr. and Mrs. Foley provide the SSD with a copy of Clare's current educational plan from the Belle Center. The ITP addressed gross motor skills, fine motor skills, cognitive skills, social/integration skills, daily living skills, and computer skills. (Complaint at ¶ 17; Legal File at 96.)
5. The SSD completed a multi-disciplinary evaluation of Clare on December 4, 1991. Based on the results of that evaluation, the SSD found Clare to be mentally retarded-mild, with delays in the areas of cognition, adaptive behavior, language, fine motor, and gross motor. An Individualized Education Program ("IEP") team met on January 8, 1992, to consider the results of the multi-disciplinary evaluation and to develop goals and objectives for Clare. At the conclusion of the IEP meeting, a plan was drafted. However, the Foleys did not sign the plan on that date. Instead, the Foleys took the plan home to consider it. (Complaint at ¶¶ 18, 19; Legal File at 96.)
6. On Wednesday, January 15, 1992, Mrs. Foley called Janet Munger of the SSD, and informed her that the Foleys were declining placement and services from the SSD. Clare completed kindergarten at St. Peter's Catholic School during the 1992-93 school year. (Complaint at ¶ 21; Legal File at 96.)
7. On July 12, 1993, the Foleys notified the SSD that they were again interested in obtaining services for Clare. The notation on the "Reactivation/Transfer Form" suggested that the Foleys were interested in the Special Non-Public Access Program ("SNAP"). The SNAP program includes both the after-school program and the dual enrollment program. However, Mrs. Foley maintains that she has never been interested in the SNAP Program. Instead, Mrs. Foley stated that, in light of her interpretation of recent Supreme Court decisions, she believed that the SSD was obligated to provide Clare with educational and related services at St. Peter's Catholic School, where Clare had attended kindergarten. (Complaint at ¶¶ 22, 23; Legal File at 96.)
*1217 8. On July 14, 1993, because of the notation on the "Reactivation/Transfer Form," it was sent to Debbie Smith, who is the Coordinator of the SNAP Program. A letter was sent to Mr. and Mrs. Foley on July 19, 1993, indicating that the Reactivation Form was being processed for a SNAP program. On August 19, 1993, Mr. and Mrs. Foley wrote Dr. David Willard, the Director of Special Education Support Services for SSD. In that letter, the Foleys stated that they were not interested in the SNAP Program. Instead, relying on Zobrest v. Catalina Foothills School District, 509 U.S. 1, 113 S.Ct. 2462, 125 L.Ed.2d 1 (1993), the Foleys suggested the following services: (1) a special education teacher to coordinate and oversee Clare's IEP; (2) itinerant speech services to be provided at St. Peter's Catholic School; (3) itinerant occupational therapy services to be provided at St. Peter's Catholic School; and (4) an aide for reading and math to be provided by SSD at St. Peter's Catholic School. (Complaint at ¶¶ 22, 23; Legal File at 97.)
9. On August 25, 1993, Dr. Willard informed Mrs. Foley that the SSD could not implement Clare's IEP at St. Peter's Catholic School. Dr. Willard suggested three alternatives: (1) enrollment in a public school; (2) enrollment in an after-school program; or (3) dual enrollment. (Complaint at ¶ 24; Legal File at 97.)
10. The Foleys agree that the SSD and the Kirkwood School District can fully include Clare in a regular public school classroom and that the SSD offered Clare a free appropriate public education by offering to educate her on a full-time basis at Keysor Elementary School, a public school. The offer to fully include Clare in the Kirkwood public school was made to her by Judy Kamper, the Kirkwood liaison to the SSD, before the beginning of the 1993-94 school year. (Hearing Tr. at 44, 45; Legal File at 99.)
11. An IEP meeting was held on September 8, 1993. Mrs. Foley indicated that Clare would be attending St. Peter's. At the conclusion of the IEP meeting, it was determined that Clare should receive two hours of services per week from a special educator for students with mental handicaps through the SNAP program. It was also determined that some assessment should be made to determine the exact degree of services Clare should receive from an occupational therapist (OT), a physical therapist (PT), and a speech/language pathologist. (Complaint at ¶ 25; Legal File at 97.)
12. The IEP team reconvened on October 13, 1993. At that time, it was determined that Clare would receive 60 minutes of occupational therapy per week, 30 minutes of physical therapy per week, and 60 minutes of language services per week. To receive the services, Clare was dually enrolled, under protest by the Foleys, at St. Peter's and Keysor Elementary School in the Kirkwood School District. (Complaint at ¶ 26; Legal File at 97-98.)
13. While receiving services through the dual enrollment program, Clare made progress in her academics. On May 4, 1994, Clare achieved a grade equivalent score of 1.6 on the vocabulary section of the Gates-MacGinitie reading test. That placed Clare on stanine five, 41st percentile. Those are average scores. In the report card issued by St. Peter's School for Clare for the 1993-94 school year, in the fourth quarter, Clare received either "outstanding" grades, "progressing well" grades, or "making some progress" grades in all areas assessed. (Petitioners' Hearing Exh. F; Legal File at 98-99.) This was during the time that she was dually enrolled.
14. On November 4, 1993, Mr. and Mrs. Foley wrote Dr. Ronald Rebore, the Superintendent of SSD, requesting an administrative review. The administrative review was held on December 3, 1993. Marc Montgomery, Director of Region III for the SSD, served as the administrative review chairman. His decision was issued on January 14, 1994. His decision is found at Exhibit R-23 of the exhibits submitted into evidence at the due process hearing. (Complaint at ¶¶ 28, 29; Legal File at 98.)
15. The parties stipulated that, if called to testify, SSD witnesses would testify that it would be more costly to provide the therapy and language services to Clare at St. Peter's than at the public school. (Legal File at 98.)
16. Mr. and Mrs. Foley, by letter dated March 31, 1994, requested a due process *1218 hearing pursuant to Missouri Revised Statute § 162.961. A hearing was held on August 18, 1994. The hearing panel ruled in favor of SSD, 2-1. The Foleys now appeal that decision to this Court. (Legal File at 1-19, 98.)
17. The hearing panel concluded that the three alternatives offered by SSD to the Foleys for services to Clare would fulfill state law requirements and that the Missouri Constitution prohibited the type of services requested by the Foleys from being provided in a sectarian school. (Legal File at 12.) The panel decided that SSD afforded Clare a genuine opportunity for equitable participation in its special education programs. (Id. at 13.)

DISCUSSION
The defendant has moved for summary judgment. This Court must grant summary judgment if, based upon the pleadings, admissions, depositions and affidavits, there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corporation v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Board of Education, Island Trees Union Free School District v. Pico, 457 U.S. 853, 863, 102 S.Ct. 2799, 2806, 73 L.Ed.2d 435 (1982). The moving party must initially demonstrate the absence of an issue for trial. Celotex Corporation, 477 U.S. at 323, 106 S.Ct. at 2552-53. Any doubt as to the existence of a material fact must be resolved in favor of the party opposing the motion. Board of Education v. Pico, 457 U.S. at 863, 102 S.Ct. at 2806.
Nevertheless, once a motion is properly made and supported, the non-moving party may not rest upon the allegations in the pleadings but must instead set forth specific facts showing that there is a genuine issue of material fact for trial. Fed.R.Civ.P. 56(e); Buford v. Tremayne, 747 F.2d 445, 447 (8th Cir.1984). Summary judgment must be granted to the movant if, after adequate time for discovery, the non-moving party fails to produce any proof to establish an element essential to the party's case and upon which the party will bear the burden of proof at trial. Celotex Corporation, 477 U.S. at 322-24, 106 S.Ct. at 2552-53.
This action is brought pursuant to 20 U.S.C. § 1415(e)(2). The statute provides that "the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." However, the Court is to give due deference to the administrative hearing body, and not substitute its judgment for that of the hearing tribunal when it comes to educational services. Board of Education v. Rowley, 458 U.S. 176, 206, 102 S.Ct. 3034, 3050-51, 73 L.Ed.2d 690 (1982).
In this case, the due process hearing panel decided that SSD met its state law requirements by offering the three alternatives to Clare and that the Missouri Constitution prohibited the type of services requested by the Foleys from being provided in a sectarian school. The panel decided that SSD afforded Clare a genuine opportunity for equitable participation in its special education programs.
The parties in this case do not dispute that defendant is required to provide Clare with the speech, occupational and physical therapy services outlined in the IEP[1]. The issue is where those services should be provided. More specifically, this Court must decide whether the IDEA requires the SSD to provide those services in a private, parochial school when it has offered Clare those services at a public school.
The Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-1485, requires participating states and their public education agencies, such as the SSD, to provide all students with disabilities with a free appropriate public education ("FAPE"). 20 U.S.C. § 1400(c) and 1412(1); Honig v. Doe, 484 U.S. 305, 308, 310, 108 S.Ct. 592, 596, 597, 98 L.Ed.2d 686 (1988). A "free appropriate public education" is defined as *1219 special education and related services that 
(A) have been provided at public expense, under public supervision and direction, without charge,
(B) meet the standards of the State educational agency,
(C) include an appropriate preschool, elementary, or secondary school education in the State involved, and
(D) are provided in conformity with the individualized education program required under section 1414(a)(5) of this title.
20 U.S.C. § 1401(a)(18). The Act's requirement of providing a FAPE is satisfied when the state provides personalized instruction with sufficient support services to allow the disabled child to benefit educationally from that instruction; the requirement of a FAPE does not require the state to maximize each child's potential commensurate with the opportunity provided to nondisabled children. Rowley, 458 U.S. at 190, 198, 102 S.Ct. at 3042, 3046.
The defendant argues that a public education agency is not required to provide a FAPE to a student who is parentally placed in a private school. Defendant relies on a policy letter from the United States Department of Education, Office for Special Education Programs ("OSEP"), which states:
[P]arentally-placed children with disabilities do not have an individual entitlement to services under Part B; therefore, school districts are not required to provide those children with all of the services under Part B to which they would be entitled if served in a public placement. Nor are school districts required to serve each and every parentally-placed child with a disability. However, in meeting their obligations to parentally placed children with disabilities, school districts must ensure that those children are afforded a genuine opportunity for equitable participation in special education programs conducted by local school districts.
* * * * * *
[I]n meeting their obligations to serve parentally-placed children with disabilities, a school district is not necessarily required by the equitable participation provisions referenced above to provide services on the premises of a private school to parentally-placed children with disabilities whom it has elected to serve.
OSEP Policy Letter (Schmidt), 20 Indiv. with Disabilities Educ.Law Rep. 1224, 1224 (December 28, 1993). Defendant argues that this is consistent with the applicable regulations under the IDEA.
In providing special education, school districts may use public school programs or they may place the child in a private school at no expense to the parents. 20 U.S.C. § 1413(a)(4)(B). If, however, the school district provides a free appropriate public education to the handicapped child, but the parents want to place their child in a private school, the school district does not have to pay for the child's education at the private school. 34 C.F.R. § 300.403(a). However, in the latter case, the school district must make services available to the child as provided under 34 C.F.R. §§ 300.450-300.452. Under those regulations, the school district must provide "special education and related services designed to meet the needs of private school handicapped children." 34 C.F.R. § 300.452. The services that Clare requires under the IEP (occupational, physical and language therapy) are "related services" under the statute. 20 U.S.C. § 1401(a)(17).
The Act requires that a state's plan for providing services to disabled children must include policies and procedures "that, to the extent consistent with the number and location of children with disabilities in the State who are enrolled in private elementary and secondary schools, provision is made for the participation of such children in the program assisted and carried out under this subchapter by providing for such children special education and related services." 20 U.S.C. § 1413(a)(4)(A). The corresponding regulations provide that, with regard to children who are placed in private schools by their parents, the state educational agency must ensure that "to the extent consistent with their number and location in the State, provision is made for the participation of private school children with disabilities in the program assisted or carried out under this part by providing them with special education and related services" and that the requirements *1220 of 34 C.F.R. § 76.651-76.662 are met. 34 C.F.R. § 300.451.
Under 34 C.F.R. § 76.654(a), local school districts are required to provide "program benefits" that are "comparable in quality, scope, and opportunity for participation" to the program benefits that the subgrantee provides for students enrolled in public schools. "[T]hese sections merely make clear that notwithstanding a unilateral placement of a child in a private school, the public agency is not relieved of all responsibility for the child, but must provide the handicapped child who is unilaterally placed in the private school with special education and related services where necessary." Work v. McKenzie, 661 F.Supp. 225, 229 (D.D.C.1987).
The language of the regulations applicable to parentally-placed children is much more general than the language applicable to the regulations that apply to a child who is placed by a state agency into a privately-operated facility:
Each [state educational agency] shall ensure that a child with a disability who is placed in or referred to a private school or facility by a public agency:
(a) Is provided special education and related services 
(1) In conformance with an IEP that meets the requirements of Secs. 300.340-300.350;
(2) At no cost to the parents; and
(3) At a school or facility that meets the standards that apply to the SEA and LEAs (including the requirements of this part); and
(b) Has all of the rights of a child with a disability who is served by a public agency.
34 C.F.R. § 300.401.
To interpret the IDEA, the Court looks first to the plain language of the statute and the related regulations. United States v. Weber Aircraft Corp., 465 U.S. 792, 798, 104 S.Ct. 1488, 1492, 79 L.Ed.2d 814 (1984). The Court must assume that the legislative purpose is expressed by the ordinary meaning of the words used. Kosak v. United States, 465 U.S. 848, 860, 104 S.Ct. 1519, 1526-27, 79 L.Ed.2d 860 (1984).
The statute and the regulations are clear that, notwithstanding the Foleys' placement of Clare at St. Peter's, SSD is not relieved of its responsibility for her but must provide her with special education and related services to meet her special needs. SSD has done that. It has provided Clare with services at Keysor Elementary public school. The Court can find no authority that requires SSD to provide those services to Clare in her private school. See Tribble v. Montgomery County Board of Education, 798 F.Supp. 668, 673 (M.D.Ala.1992) (school board was required to provide child who was unilaterally placed by his parents in a private school with the related services of occupational, speech and physical therapy and transportation necessary to secure those services, but stating in dicta that the school board was not required to make those services available to the child at his private school), vacated after joint motion to dismiss appeal granted (1993). Under the plain language of the regulations, "there is no indication that the State and the local agency's obligation to `make services available' and to `provide' such services equates to an obligation to pay for related services where the school has an appropriate alternative." Dreher v. Amphitheater Unified School District, 797 F.Supp. 753, 759 (D.Ariz.1992) (holding that regulations do not require school district to pay for related services when parents unilaterally place the child in a private school out of state) (citing Work, 661 F.Supp. at 229), aff'd, 22 F.3d 228 (9th Cir.1994). The IDEA does not require a school district to provide special education services at a private school as long as the services are made available at a public school. See Goodall v. Stafford County School Board, 930 F.2d 363, 367 (4th Cir.), cert. denied, 502 U.S. 864, 112 S.Ct. 188, 116 L.Ed.2d 149 (1991); McNair v. Cardimone, 676 F.Supp. 1361, 1366 (S.D.Ohio 1987), aff'd sub. nom. on other grounds; McNair v. Oak Hills Local School District, 872 F.2d 153 (6th Cir.1989); Work v. McKenzie, 661 F.Supp. 225, 229 (D.D.C.1987).
Plaintiffs rely on K.R. v. Anderson Community School Corporation, 887 F.Supp. 1217 (S.D.Ind.1995). The issue in that case was whether the IDEA required the school to provide a child with an instructional assistant at a private parochial school. The court focused on the child's particular needs and *1221 found there was no comparable alternative to in-class services provided by an instructional assistant. The alternative offered by the school, as long as she was enrolled at the parochial school, was periodic contact with an instructional assistant at a public site. The court found that alternative would not provide her with the benefit of an instructional assistant at all. The court agreed with the plaintiffs' argument that:
Unlike some other services that can be provided from time to time, such as scheduled speech, occupational, and physical therapy, the purpose of an instructional assistant is to provide assistance in the classroom virtually all the time. This particular benefit would be meaningless if the assistant were not at the private school with K.R., in her classroom. Thus, in order for K.R. to receive a benefit comparable to the benefit she would receive if she attended public school, argue the plaintiffs, she must be provided with an instructional assistant at her private school.
Id. at 1222. The school district had provided speech therapy, occupational therapy, and physical therapy at a public school site, as well as transportation to that site, and the plaintiffs did not challenge the location of those services. Id. at 1220. The Court found that the services at issue (those of the instructional assistant) were indisputably tied to the child's special needs. Id. The services at issue in the instant case are the same that the court in K.R. referred to as scheduled services, not services such as an instructional assistant who needs to be with the child all day in the classroom.
Plaintiffs also argue that Zobrest v. Catalina Foothills School District, 509 U.S. 1, 113 S.Ct. 2462, 125 L.Ed.2d 1 (1993), mandates that the services requested by the Foleys be provided to Clare at St. Peter's. (Compl. at ¶ 68(f)). Zobrest held that there was no First Amendment prohibition under the Establishment Clause to a school district placing a public employee (sign language interpreter) in a parochial school to aid a student. Id. at 12-14, 113 S.Ct. at 2469. However, that case did not hold that the school district was required to do so under the relevant statutes and regulations.
The services offered to Clare at Keysor Elementary are consistent with Clare's IEP and the services are available to her. The Court concludes from the record that Clare is provided "a genuine opportunity for equitable participation" in this program, 34 C.F.R. § 76.651(a)(1), thereby fulfilling the defendant's responsibility under the IDEA. Therefore, the Court need not address the defendant's other arguments, that SSD is prohibited by the Establishment Clause of the First Amendment and the Missouri Constitution from providing these services at St. Peter's.
In their complaint, at paragraphs 68(h) and (i), plaintiffs also allege procedural violations of the IDEA. See 20 U.S.C. § 1415(b); Legal File at 14-17. However, the parties have not argued this issue on the motion for summary judgment. The parties will be ordered to advise the Court of whether any further proceedings are necessary in this action. An appropriate Order is issued herewith.
NOTES
[1] Section 1414(a)(5) of Title 20, U.S.C., requires SSD to establish, review, and revise as needed an individualized education program ("IEP") for each handicapped child.