Tom TRIBBLE and Jean Tribble, as parents and next friend of Jacob T., a minor, Plaintiffs,

v.

MONTGOMERY COUNTY BOARD OF EDUCATION, Defendant.

Civ. A. No. 91–H–1536–N.

United States District Court, M.D. Alabama, N.D.

July 28, 1992.

Ginger Tomlin, Birmingham, Ala., for plaintiffs.

Robison & Belser, James R. Seale, Montgomery, Ala., for defendant.

MEMORANDUM OPINION

HOBBS, District Judge.

Plaintiffs Tom and Jean Tribble filed this action in federal district court on behalf of their son, Jacob, to appeal the decision of the administrative hearing officer rendered

under the authority of the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 et seq.[1] A trial was held in this cause on July 14, 1992 at which time the Court heard arguments and allowed the presentation of supplementary evidence.

## FACTS

Jacob T. is the four-year-old child of plaintiffs Tom and Jean Tribble. Jacob has Down's Syndrome, a condition which makes him mentally disabled and speech impaired. Thus he is a handicapped child eligible for special education and related services under the IDEA. The Montgomery County Board of Education (Board) receives federal funds from the United States Department of Education pursuant to the IDEA and is required to provide special education services to handicapped students within Montgomery County.

On August 13, 1991, representatives of the Board met with the Tribbles to plan and develop for Jacob an interim Individualized Education Program (IEP). The Tribbles, Ralph Griswold, Director of Special Education for Montgomery County, Ann Griswold, Administrator of the Children's Center, Chris Henderson, Supervisor of Special Education, and Sharon Tomlinson, a preschool special education teacher at the Children's Center, attended the meeting. The Board and school officials proposed an IEP for Jacob which included a three-day per week program and indicated that speech and language and physical therapy services were to be determined within thirty days, that occupational therapy services would be provided according to the occupational therapist's recommendations, and that transportation would be provided. At this time, the Tribbles expressed their preference for having Jacob placed in a five-day program.

The Tribbles thereafter contacted Beverly Hunter, Coordinator of Special Education Services for the State of Alabama Department of Education, to ask if related services would be provided to Jacob if they chose to place him in a private school program sponsored by the Montgomery Association for Retarded Citizens (MARC). Although Ms. Hunter initially stated that such services would be available for Jacob, she later called Ms. Tribble to explain that it was the State Department's position that local education agencies did not have an obligation to provide related services to a disabled child when a child's parents unilaterally place him in a private school.

A second meeting regarding Jacob's IEP was held on September 9, 1991. At this meeting, the Tribbles requested that the Board provide Jacob with the related services of speech, physical and occupational therapy and transportation. On September 12, the Board conducted evaluations of Jacob and determined that he needs speech, physical and occupational therapy. Shortly thereafter, the special education coordinator for the Board informed the Tribbles that the Board would not provide the related services to Jacob if he was attending the MARC program and not receiving his special education at the Children's Center.

The Tribbles requested a due process hearing to determine whether Jacob should be receiving related services from the Board even though he was attending the MARC program. On October 30, 1991, a due process hearing was held pursuant to the provisions of the IDEA before a Hearing Officer. In his decision dated November 17, 1991, the Hearing Officer denied the complaint brought by the Tribbles. They now seek review of this decision by this Court.

## STANDARD OF REVIEW

The IDEA provides that parties aggrieved by findings and decisions made in hearings conducted pursuant to the Act may bring a civil action in a district court of the United States. 20 U.S.C. § 1415(e)(2). The statute further directs that "the [district] court shall receive the records of the administrative proceedings, shall hear additional evidence at the re-

---

**1.** The IDEA is implemented by federal, 34 C.F.R. Part 300, and state, *Ala.Admin.Code* 290–080– 090, regulations.

quest of a party, and basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(e)(2).

The First Circuit has described the review by the district court of administrative hearings held pursuant to the IDEA as "'something short of a trial de novo.'" *Town of Burlington v. Dept. of Educ., Commonwealth of Massachusetts*, 736 F.2d 773, 790 (1st Cir.1984), *aff'd*, 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985) (quoting *Colin K. By John K. v. Schmidt*, 715 F.2d 1, 5 (1st Cir.1983)). *See also G.D. v. Westmoreland Sch. District*, 930 F.2d 942 (1st Cir.1991). Therefore, although the court must make an independent ruling based on the preponderance of the evidence, the evidence considered by the court will consist of the record of the administrative hearing and relevant additional or supplemental evidence presented at trial. *Town of Burlington* at 790. Although the court must give "due weight" to the proceedings conducted at the administrative level, it is within the discretion of the court to determine what weight to give the administrative findings of fact. *Id.* at 791–92.

## DISCUSSION

The Tribbles maintain that the Board is denying their son the free appropriate public education due him under the IDEA. The Board contends that federal law and federal and state regulations do not impose upon the Board as a local educational agency the obligation to provide a child who is unilaterally placed by his parents in a private school with related services such as transportation, speech, physical, and occupational therapy.[2] Rather, argues the Board, it has met its obligations under the IDEA by offering Jacob a free appropriate public education including special education and related services at the Children's Center.

The IDEA requires participating states to provide all disabled children with a free appropriate public education. 20 U.S.C. § 1400(c) and § 1412(1). Public school systems must provide to disabled children special education services as well as related services which may encompass speech, physical and occupational therapy and transportation. 20 U.S.C. § 1401(a)(17). In order to secure for a child a free appropriate public education, a local education agency such as the Montgomery County Board of Education may utilize public school programs or may place and fund a disabled child in a private school. 34 C.F.R. §§ 300.400–300.402. However, "[i]f a handicapped child has available a free appropriate public education and the parents choose to place the child in a private school or facility, the public agency is not required ... to pay for the child's education at the private school or facility." 34 C.F.R. § 300.403. Nonetheless, under such circumstances "the public agency shall make services available to the child as provided under §§ 300.450–300.460." 34 C.F.R. § 300.403.

The Act requires that a state's plan for providing services to disabled children must include policies and procedures "that, to the extent consistent with the number and location of children with disabilities in the State who are enrolled in private elementary and secondary schools, provision is made for the participation of such children in the program assisted or carried out under th[e] subchapter by providing for such children special education and related services." 20 U.S.C. § 1413(a)(4)(A). C.F.R. regulations §§ 300.450–300.460 provide that, with regard to children who are placed in private schools by their parents, the state educational agency must ensure that "to the extent consistent with their number and location in the State, provision is made for the participation of private school handicapped children in the program assisted or carried out under this part by

---

**2.** Defendant's brief seems to assume that plaintiffs seek to have the Board provide Jacob with related services at McInnis, the private school he is attending. The Court interprets plaintiffs' position to be that the Board is required to provide Jacob with related services at the Children's Center (the Board's special education facility) and transportation from McInnis to the Children's Center in order to receive these services.

providing them with special education and related services" and that the relevant Education Department General Administrative Regulations (EDGAR)—34 C.F.R. §§ 76.651–76.663—are met. 34 C.F.R. § 300.451.[3] In addition, the local agency is required to provide special education and related services designed to meet the needs of disabled children who are unilaterally placed in private schools and who reside within the jurisdiction of the local agency. 34 C.F.R. § 300.452.

The precise question before this Court is whether the IDEA and its implementing regulations require that, when a disabled child is unilaterally placed by his parents in a private school, the local educational agency must provide related services to that child. Defendant contends that despite the provision that "the public agency shall make services available to the child" whose parents place him in a private school, it has no such obligation; plaintiff maintains that it does.

In *Work v. McKenzie*, 661 F.Supp. 225 (D.D.C.1987), a case for some reason relied on by defendant, the court considered the question of whether the Education for All Handicapped Children Act (EAHC) (precursor to the IDEA) required a public school district to provide a disabled child unilaterally placed by her parents in a private school with transportation to the private school from her home. In holding that, under such circumstances, the local educational agency did not have to provide transportation as a related service the court stated:

Once DCPS [the local educational agency] has designated an appropriate placement, the parents have a choice. They can place the child in the public or private school designated by DCPS or they can place the child in a private school of their own choosing without approval by DCPS. If they elect the latter, DCPS is not required to pay for the school, however, if the private school lacks a special education component that the child requires, for example, speech therapy, DCPS *would then be required to furnish that service and to provide transportation where necessary.*

661 F.Supp. at 228–229 (emphasis added). The court in *Work* goes on to state that the statute and the implementing regulations of IDEA (then referred to as EHA or EAHC) make clear that the unilateral placement of a child in a private school does not relieve the local educational agency of its responsibility for providing that disabled child with special education and related services where necessary. *Id.* at 229. The determinations of the court in *Work* clearly undermine defendant's position that it is not obligated to provide Jacob with any related services once his parents choose to place him in the private program.

Other cases leave open the possibility that although the local educational agency may not be obligated to provide a certain service for a specific reason, the local agency nonetheless may be obliged to provide related services to children placed by their parents in private schools. *See McNair v. Oak Hills Local School District*, 872 F.2d 153 (6th Cir.1989) (public school district need not provide related service to child voluntarily placed in private school if particular service not designed to meet unique needs of child);[4] *Wright v. Saco School Department*, CV–90–339 (Me.Super.Ct.1991) (local education agency not required to provide related services at parochial school; physical and occupational therapy for private school child should be

---

**3.** The EDGAR regulations provide in part:

A subgrantee [or local educational agency] shall provide students enrolled in private schools with a genuine opportunity for equitable participation in accordance with the requirements in §§ 76.652–76.662 and in the authorizing statute and implementing regulations for a program.

34 C.F.R. § 76.651. The additional regulations referred to in § 300.451 determine how and to what extent a subgrantee must provide

for equitable participation in programs by children attending private schools.

**4.** The Sixth Circuit in *McNair* affirmed the district court holding, 676 F.Supp. 1361 (S.D.Ohio 1988), but specifically distanced itself from the reasoning employed by the district court. The appellate court determined that related services should be provided to disabled children placed by their parents in private schools only if certain criteria are met. 872 F.2d at 156.

conducted at public school facility), *aff'd*, —— A.2d —— 1992 WL 158256 (Me.).

Plaintiffs also have cited the Court to decisions made by hearing officers around the country. These decisions are uniform in their conclusion that the IDEA and its accompanying regulations entitle disabled children unilaterally placed in private schools to receive special education and related services from local education agencies. *See Albuquerque Bd. of Education,* 17 EHLR 775 (N.M.1991); *Anthony Wayne Local Sch. District,* 16 EHLR 1032 (Oh.1990); *Los Altos Sch. District,* 1985–86 EHLR DEC. 507.327; *Lakeside Union School,* 1985–86 EHLR DEC. 507:125; *In the Matter of Bd. of Educ. of City Sch. Dist. of City of New York,* 1984–85 EHLR DEC. 506:309. Although these decisions have no binding authority upon this Court, the Court notes that in a variety of circumstances hearing officers have required local education agencies to provide related services such as speech therapy and transportation for such therapy to children placed by their parents in private schools.[5]

Defendant offers to the Court letters written by Judy Schrag, the Director of the Office of Special Education Programs in the United States Department of Education (OSEP), in which she delineates the position taken by OSEP on the issue at hand. According to the director of the agency charged with interpreting the regulations at issue: "A public agency ... may elect not to serve every parentally-placed child residing in its jurisdiction. In addition, a public agency is not required to make the full range of Part B services available to those parentally-placed children with disabilities in private schools whom it has elected to serve." Ltr. from Schrag at 2.

The Court recognizes that the positions taken by OSEP are entitled to deference. "Although an agency's interpretation of the statute under which it operates is entitled to some deference, 'this deference is constrained by our obligation to honor the clear meaning of a statute, as revealed by its language, purpose, and history.'"

*Southeastern Community College v. Davis,* 442 U.S. 397, 411, 99 S.Ct. 2361, 2369, 60 L.Ed.2d 980 (1979) (quoting *Teamsters v. Daniel,* 439 U.S. 551, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979)). None of the authorities relied on by defendant or plaintiff other than letters from OSEP—from hearing officers to federal courts—has construed the Act as does OSEP. The deference normally due to OSEP interpretations is compromised by the existence of a host of rulings that reject the agency's interpretation of the statute and regulations on the issue at hand. Further, the explicit language of the IDEA's implementing regulations states that children who are placed in private schools by their parents and not by a public agency must be provided with special education and related services. The Court thus concludes that the language and clear intent of the IDEA require that where a child such as Jacob is placed in a private school or program by his parents the local education agency remains responsible for providing that child with related services required by a particular child's needs.

The Court recognizes the validity of the Board's concern with providing special education students with a program that integrates special education with related services. Testimony from individuals involved with the provision of special education supports the argument that related services are provided most successfully to disabled children when they are integrated with children's daily learning environment. The Court is convinced that the school authorities genuinely feel that Jacob T. would be better off in the program offered at the Children's Center. Indeed, the attention received by Jacob in combination private and public settings may not be as beneficial as it would be if offered in an integrated setting. The Court, therefore, is not suggesting that providing special education in a private setting and related services in a public setting is the optimal arrangement for Jacob or any other disabled child. Rather, the Court is acknowledging the directives of the statute.

---

5. Transportation is required as a related service where it is necessary to take a parentally-placed child from a private school to the facility where

other services, such as speech therapy, are provided.

Not a single case has been cited that indicates that related services should not be provided to children unilaterally placed in private schools.[6] On the contrary, the cases and statutory and regulatory language cited above state the opposite.[7]

Finally, the Court is only too aware that programs providing special education and related services to disabled children in the State of Alabama already are severely underfunded. The Court is also painfully aware of the underfunding and proration which all schools in Alabama have confronted for several years, but such conditions do not provide a basis for the Court to deny to Jacob the benefits which have been mandated even though he is in a private school. Requiring the Board to provide Jacob with related services and the transportation necessary to let him have access to these services may not be the wisest use of very limited resources, but the Court concludes that this is what the Act requires. The Court urges once again that the parties approach this problem in a cooperative spirit so as to award mandated benefits to Jacob with the least possible burden to an already overloaded school system.

## CONCLUSION

The Court therefore finds that the Montgomery County Board of Education is required to provide Jacob T. with the related services of occupational, speech, and physical therapy and transportation necessary to secure these services. The Board is not required to make these services available to Jacob in his private school setting, nor does the Court understand that the plaintiffs are seeking such services at the private school.

6. The district court opinion in *McNair v. Cardimone,* 676 F.Supp. 1361 (S.D.Ohio 1987), provides language to support both the plaintiffs' and the defendant's positions. To the extent that the opinion suggests that local education agencies are not obliged under the IDEA to provide children unilaterally placed in private schools with related services, this Court declines to follow its reasoning. On appeal, the circuit court stated that "we do not agree with the rationale of the district court." *McNair v. Oak Hills Local Sch. District,* 872 F.2d 153, 157. Thus the rationale of the district court has little if any precedential value.

The Sixth Circuit determined that a disabled child is eligible for related services only if certain criteria are met. Because the service sought in that case was not designed to meet the unique needs of the child, the court ruled that the public school district need not provide the service. The court declined to decide whether the school district was responsible under the federal statute for providing the related service

under the particular circumstances of the case at hand.

7. In *Goodall v. Stafford County Sch. Bd.,* 930 F.2d 363 (4th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 188, 116 L.Ed.2d 149 (1991), the court ruled that the local agency was not required "to provide services on the premises of private schools in order to meet their obligations under 20 U.S.C. § 1413(a)(4)(A)." Rather, department regulations provide that students with handicaps enrolled in private school must be provided by state and local education agencies " 'with a genuine opportunity for equitable participation' in the special education carried out by these agencies. The Department has long held that it is possible for SEAs and LEAs to provide students with handicaps enrolled in private schools with a genuine opportunity for equitable participation by serving them at a public school or neutral site." *Id.* at 368 (quoting a letter from Judy Schrag, Director of OSEP).