**K.R., an infant by her parents and next friends, M.R. and K.R.R., and M.R. and K.R.R., Plaintiffs,**

v.

**ANDERSON COMMUNITY SCHOOL CORPORATION, Defendant.**

No. IP 94–766–C H/G.

United States District Court, S.D. Indiana, Indianapolis Division.

May 25, 1995.

Milo G. Gray, Jr., Gary W. Ricks, Indiana Protection and Advocacy Services, Indianapolis, IN, for plaintiffs.

David Gotshall, Anderson, IN, for defendant.

## MEMORANDUM OPINION

HAMILTON, District Judge.

The central issue in this case is whether the federal Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400–1485, requires a local school corporation to provide for a child with disabilities an instructional assistant at a private parochial school. Plaintiffs are K.R., who is seven years old, and her parents. The defendant is the Anderson Community School Corporation. If K.R. attended public school, her disabilities would require the school corporation to provide a full-time instructional assistant to attend class with her. Plaintiffs seek declaratory and injunctive relief to obtain the same assistance for K.R. at the private parochial school she attends. The court has subject matter jurisdiction under 20 U.S.C. § 1415(e) and 28 U.S.C. § 1331. The court grants the requested relief because the applicable federal regulation requires the school corporation to provide benefits to disabled private school students that are "comparable" to the benefits provided to disabled public school students. The school corporation must provide an instructional assistant for K.R. at St. Mary's School in Anderson, Indiana.[1]

### Facts

K.R. has been diagnosed with several serious conditions: myelomeningocele, spina bifida, and hydrocephalus with a shunt. K.R. uses a wheelchair, which helps her achieve some limited mobility. However, she still needs someone to help move her from place to place, to position her, and to secure her so that she can participate in school activities. She also needs assistance in expressing language, both orally, through special speech therapy, and in writing, through compensation for her limited finger dexterity.

When K.R. was three years old, her parents enrolled her in the school corporation's pre-school program. She received there a number of special services. As K.R. approached kindergarten age, the school corporation held case conference committee meetings to develop an "individualized educational program" for K.R., as required and defined by the IDEA. See 20 U.S.C. § 1414(a)(5), 20 U.S.C. § 1401(a)(20). K.R.'s parents attended these meetings. At some point, they expressed a desire, based on their religious beliefs, for K.R. to attend St. Mary's School, a private parochial school, rather than the local public school. Records from as early as April 9, 1993, indicate this possibility.

Three case conference meetings resulted in a final recommendation on August 9, 1993, that K.R. be placed in a regular kindergarten class and be provided with related education-

---

1. The parties agreed to submit this case through briefs, stipulated written evidence, and the record of the administrative hearing in this matter. Oral argument was heard on April 12, 1995. This opinion sets forth the court's findings of fact and conclusions of law.

al services including speech therapy, occupational therapy, physical therapy, transportation, and the services of an instructional assistant. Occupational and physical therapists would develop ways to transport and position K.R. They in turn would train both K.R.'s classroom teacher and an instructional assistant in the proper methods of transporting and positioning K.R. (A classroom teacher would have "extreme difficulty" providing K.R. assistance without an aide in the classroom.) The therapists would see K.R. approximately once a week to refine her services constantly and to make sure existing assistance was being provided properly. Neither party disputes these recommendations.

At the case conference meeting on August 9, 1993, the school corporation informed K.R.'s parents that it would not provide special services to K.R. at St. Mary's. The school corporation relied on 511 Ind.Admin.Code § 7–4–4(c), which authorizes a school corporation to decide where it will provide special education services. Pursuant to the procedure set forth in the IDEA at 20 U.S.C. § 1415 and in related Indiana regulations, plaintiffs requested on August 26, 1993, a due process hearing to address the school corporation's refusal to provide an instructional assistant at St. Mary's. News of the plaintiffs' request for a hearing apparently prompted the school corporation to take new action. Without notice to plaintiffs, it sent a physical therapist and an occupational therapist to St. Mary's on September 3, 1993, to evaluate physical accessibility there.

In the meantime, K.R. started kindergarten at St. Mary's that fall. Since then, K.R.'s mother, M.R., has attended school full-time with K.R., serving as the instructional assistant that the school corporation refused to provide. The school district has provided speech therapy, occupational therapy, and physical therapy for K.R. at a public school site, as well as transportation to that site. Plaintiffs do not challenge the location for those services.

A hearing officer presided over an evidentiary hearing on October 26, 1993, which addressed the location for K.R.'s instructional assistant services. School corporation witnesses testified that the positioning methods they used for K.R. in pre-school could also be used at St. Mary's because no special equipment was required. However, they expressed concerns about K.R.'s safety in being transported at St. Mary's.[2] Although the school corporation had not based its original refusal to provide an instructional assistant at St. Mary's on this ground, it argued in the hearing (and before this court) that safety was a specific goal expressed in K.R.'s individual education program, and that it cannot in good conscience provide an instructional assistant to K.R. at St. Mary's, thereby facilitating K.R.'s education in violation of the safety goal.

The hearing officer ultimately decided that the school corporation was not obligated to provide the instructional assistant for K.R. at St. Mary's. Plaintiffs appealed to the Indiana Board of Special Education Appeals, which upheld the decision of the hearing officer. Having exhausted their administrative remedies, plaintiffs then filed a complaint with this court. K.R. has nearly completed the first grade at St. Mary's. Her mother, M.R., still attends school with her and serves as her instructional assistant.

### The Parties' Claims

K.R. and her parents rely on the IDEA and accompanying regulations which require the school corporation to provide to children in private schools special education services that are "comparable" to those services of-

2. St. Mary's School is in a multi-story building that is not wheelchair accessible. School corporation witnesses expressed concern that an instructional assistant would have to carry K.R. up eight steps to enter the building, twenty-four steps to attend art and music classes, twelve steps to attend physical education class, and additional steps up and down for recess and for required services in a church across the street from the school. The school corporation witnesses said that K.R. is more likely to be injured seriously if she falls than an average person would be. They also expressed concern about K.R.'s safety in a potential emergency situation, such as a fire. Plaintiffs do not dispute these facts about the physical facilities of the St. Mary's building, but say they are working with St. Mary's to make the school more accessible to K.R. and other disabled children.

fered to children in the public school system. Plaintiffs also argue that even if the IDEA itself does not require the school corporation to provide an instructional assistant for K.R. at St. Mary's, the school corporation's failure to do so, along with K.R.'s acknowledged need for an instructional assistant, imposes a substantial burden on their choice to have K.R. attend St. Mary's. Plaintiffs claim that this burden violates their First Amendment right to free exercise of religion and also violates the Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb to 2000bb–4.

The school corporation acknowledges K.R.'s need for an instructional assistant, and it is willing to provide an instructional assistant if K.R. and her parents choose for her to attend a public school. However, the school corporation argues that the federal regulations do not entitle K.R. to an instructional assistant at a private school, and it further asserts that an Indiana state regulation gives it the discretion to choose where to provide an instructional assistant. The school corporation denies that its exercise of discretion here violates the First Amendment's Free Exercise Clause or the Religious Freedom Restoration Act. Instead, the school corporation claims that providing an instructional assistant for K.R. at St. Mary's would violate the general goal of safety set forth in the individual education plan for K.R., and would violate Article I, Section 6 of the Indiana Constitution, which prohibits expenditures of public funds for the benefit of religious institutions.

*Burden of Proof/Standard for Review*

■ In reviewing administrative decisions under the IDEA, a district court must make an independent decision as to whether the requirements of the IDEA have been satisfied. *Lachman v. Illinois State Bd. of Educ.*, 852 F.2d 290, 293 (7th Cir.1988). The court must base its decision on a preponderance of the evidence, and may receive and consider evidence not presented earlier in administrative proceedings. 20 U.S.C. § 1415(e)(2). The administrative proceedings must receive "due weight," however, because courts should not "substitute their own notions of sound educational policy for

those of the school authorities which they review." *Board of Education v. Rowley*, 458 U.S. 176, 206, 102 S.Ct. 3034, 3051, 73 L.Ed.2d 690 (1982). Thus, as Judge Brooks has described, for most cases, "the standard of review for IDEA cases lies somewhere in between the review accorded an administrative determination and a *de novo* examination." *Elizabeth K. v. Warrick County Sch. Corp.*, 795 F.Supp. 881, 885 (S.D.Ind.1992). In light of the issues in this case, the standard of review is closer to the *de novo* end of the spectrum. This case does not present any substantial question of educational policy. The parties agree that K.R. needs an instructional assistant. The central dispute here is a matter of law: the interpretation and application of a federal regulation that extends certain rights to disabled children who choose to attend private schools.

*IDEA Benefits for Private School Students*

The IDEA was enacted in part to "assure the effectiveness of efforts to educate children with disabilities." 20 U.S.C. § 1400(c). The Act emphasizes special education and related services, and provides funding for local school district programs. Regulations adopted pursuant to the IDEA set forth the details of the program. *See* 20 U.S.C. § 1417(b). Local school districts must comply with the federal regulations in order to receive federal funding assistance, which is administered through state agencies.

The IDEA extends benefits to private school students. Specifically, the IDEA itself provides that if a particular child's needs cannot be met in the public school system, that system is still responsible for the child's education, even if it places the child in or refers the child to a private school or facility. 20 U.S.C. § 1413(a)(4); *see also* 34 C.F.R. §§ 300.401–300.402. The regulations provide that if a child's needs can be met in the public school system, and if the parents choose to place the child in a private school or facility, the public system is not required to pay for the child's tuition at the private school. 34 C.F.R. § 300.403(a). That is the situation we have here. However, where parents choose to place a child in a private school, the public system still must "provide

special education and related services designed to meet the needs of private school children [as well as public school children] with disabilities residing in the jurisdiction of the [local school district]." 34 C.F.R. § 300.452; *see* 34 C.F.R. § 300.403(a).

In providing special services to private school students, the public school system must meet a number of standards. 34 C.F.R. § 300.451 (applying the more general education regulations, 34 C.F.R. §§ 76.651–76.662). Central in this case is the following standard:

> *Comparable benefits.* The program benefits that a subgrantee [local school district] provides for students enrolled in private schools must be comparable in quality, scope, and opportunity for participation to the program benefits that the subgrantee provides for students enrolled in public schools.

34 C.F.R. § 76.654(a).

The parties agree that if K.R. attended public school, the school corporation would provide an in-class instructional assistant. Plaintiffs therefore argue that the "comparable benefits" provision of 34 C.F.R. § 76.654(a) requires the school corporation to provide an instructional assistant for K.R. at St. Mary's School. They say the school corporation's refusal to provide the benefit of instructional assistant services to K.R. means that the school corporation is not providing her a benefit "comparable in quality, scope, and opportunity for participation" to the benefit of instructional assistant services provided in a public school for a public school student. Unlike some other services that can be provided from time to time, such as scheduled speech, occupational, and physical therapy, the purpose of an instructional assistant is to provide assistance in the classroom virtually all the time. This particular benefit would be meaningless if the assistant were not at the private school with K.R., in her classroom. Thus, in order for K.R. to receive a benefit comparable to the benefit she would receive if she attended public school, argue the plaintiffs, she must be provided with an instructional assistant at her private school. As explained below, this court agrees.

Published decisions in two federal court cases have directly addressed 34 C.F.R. § 76.654 and have held that it did not require public school systems to provide in private school settings the particular special education services requested by students with disabilities and their families. In *McNair v. Cardimone,* 676 F.Supp. 1361 (S.D.Ohio 1987), the plaintiff parents placed their hearing-impaired child in a private religious school and wanted the local public school system to pay for transportation to the private school. The district court held that § 76.654 did not require the public system to pay for that service:

> The state is not required to provide duplicate services at the private school. Section 76.654 imposes no additional requirement that the state pay for a child's special education and related services when the child's parents decline the free appropriate public education offered by the state and choose to enroll the child in a private school.

676 F.Supp. at 1366. On appeal, the Sixth Circuit did not agree with the district court's rationale but affirmed the judgment, holding that because the particular benefit at issue—transportation—was not designed to meet the special needs of the child, the public school system was not required to provide it as an IDEA service. *McNair v. Oak Hills Local Sch. Dist.,* 872 F.2d 153, 156–57 (6th Cir.1989) (citing 20 U.S.C. § 1400(c)). *Cf. McNair,* 676 F.Supp. at 1363 ("if transportation services need to be provided to handicapped children in order for them to participate in special education, the state is required to provide transportation service even though such service is not required by the nature of their handicap").

*McNair* differs from the present case because the services at issue here—those of an instructional assistant—are indisputably tied to K.R.'s special needs. In *McNair,* the district court and the Sixth Circuit noted that the disabled child needed no more transportation services than any other child. 676 F.Supp. at 1363, 1371; 872 F.2d at 155. By providing transportation, the public school district would not have been compensating for a disability, as the IDEA mandates. In-

stead, it would have been granting a benefit that non-disabled private school students might want but would not be entitled to receive. The reasoning of *McNair* therefore does not apply to this case.

The second case interpreting § 76.654 is *Goodall v. Stafford County Sch. Bd.*, 930 F.2d 363 (4th Cir.1991), in which the parents of a hearing-impaired child wanted a public school system to provide a cued speech interpreter at the private school where they had chosen to enroll the child. Like the instructional assistant plaintiffs seek here, the interpreter would have needed to attend class with the child full-time in order to offer valuable service to him. The Fourth Circuit held that the IDEA and regulations, including 34 C.F.R. § 76.654(a), did not require the school district to provide the interpreter at the private school. The court concluded: "If the County's offer of services in a public school is 'meaningless' to Matthew [the student], as his parents claim, it is because of the parents' decisions and conditions for Matthew's education, not by the operation of any state or federal law." 930 F.2d at 369.

In the present case, as in *Goodall*, the parents made the decision for the student to attend the private school. If the Fourth Circuit's interpretation of § 76.654(a) in *Goodall* is correct, then this court would need to deny the relief the plaintiffs seek. That result would be contrary to the plain language of § 76.654(a), for it would mean that as applied to the services of an instructional assistant—services essential to K.R.'s education at any school—she would receive no benefits at all because she attends St. Mary's. No benefits are not the "comparable" benefits required by § 76.654(a).

The Fourth Circuit cited four main sources of authority for its decision in *Goodall* on this issue: (1) the district court opinion in *McNair*; (2) the Fourth Circuit's decision, *Barnett v. Fairfax County Sch. Bd.*, 927 F.2d 146 (4th Cir.1991), holding a school district was not required to provide special education services at a public high school closer to plaintiff's house than the school where the services were provided; (3) an IDEA regulation prohibiting use of funds for religious purposes, 34 C.F.R. § 76.532; and (4) a United States Department of Education administrative ruling. *See Goodall*, 930 F.2d at 367–69.

This court disagrees with the Fourth Circuit's reliance on these four sources of authority. First, as explained above, *McNair* dealt with a service that was not sufficiently related to the particular child's needs in order to qualify under the IDEA. Second, *Barnett* dealt with services provided to a public school student at a public site, and the principal issue was whether the school corporation would be required to duplicate an extensive program of services at another public school more convenient to the plaintiff. 927 F.2d at 152. Neither *McNair* nor *Barnett* addressed the real focus of § 76.654(a)— whether IDEA services provided to private school students must be "comparable" to those provided to public school students.

■ Third, the regulation cited in *Goodall*, 34 C.F.R. § 76.532, which prohibits use of funds for religious purposes,[3] must be considered in conjunction with 34 C.F.R. § 76.658, which provides:

Funds not to benefit a private school.

(a) A subgrantee [school district] may not use program funds to finance the existing level of instruction in a private school or to otherwise benefit the private school.

---

3. Use of funds for religion prohibited.
(a) No State or subgrantee may use its grant or subgrant to pay for any of the following: (1) Religious worship, instruction, or proselytization (2) Equipment or supplies to be used for any activities specified in paragraph (a)(1) of this section. (3) Construction, remodeling, repair, operation, or maintenance of any facility or part of a facility to be used for any of the activities specified in paragraph (a)(1) of this section.

(4) An activity of a school or department of divinity.
(b) As used in this section, "school or department of divinity" means an institution or a component of an institution whose program is specifically for the education of students to:
(1) Prepare them to enter into a religious vocation; or
(2) Prepare them to teach theological subjects.

(b) The subgrantee *shall* use program funds to meet the specific needs of students enrolled in private schools, rather than:

(1) The needs of a private school; or

(2) The general needs of the students enrolled in a private school.

(Emphasis added.) Under these two regulations, the question is whether public IDEA funds are used to benefit the private school (by going toward religious worship or instruction, equipment or supplies, physical facilities, or school activities) or are used instead to benefit a particular qualifying IDEA student (by going toward services designed to meet her specific needs). Here, it is clear that funding for an instructional assistant for K.R. would be used to meet her specific needs, not to subsidize St. Mary's more generally as a school or religious institution.

After *Goodall* was decided, the Supreme Court confirmed that § 76.532 does not create any separate regulatory limitation for the IDEA, but "merely implements the Secretary of Education's understanding of (and thus is coextensive with) the requirements of the [federal] Establishment Clause." *Zobrest v. Catalina Foothills Sch. Dist.,* — U.S. —, — n. 7, 113 S.Ct. 2462, 2465 n. 7, 125 L.Ed.2d 1 (1993) (acknowledging that Fourth Circuit placed a different interpretation on § 76.532). Thus, § 76.532 itself should not undermine the rights granted to private school students by § 76.654(a).

Fourth, the cited U.S. Department of Education administrative ruling offers only limited support for the *Goodall* holding.[4] In response to a claim by the school corporation that the particular benefit being sought would violate a state law, the Goodall family requested a "by-pass" from the Department of Education. Under the by-pass procedure, the local school corporation and supervisory state agency would be exempt from the IDEA requirement that supposedly violated the state constitution or state statute. Instead the federal agency itself would provide the required service. *See* 20 U.S.C. § 1413(d). The Department responded in part:

[Public educational agencies] do not necessarily have to provide services on the premises of private schools in order to meet their obligations under [the IDEA].... Whether [a local educational agency] would have to provide on-site services to meet the 'equitable participation' requirement would depend on the specific facts respecting each of the students with handicaps enrolled in private schools within its jurisdiction to whom it is providing services.

*Goodall,* 16 EHLR 1398, 1399–1400 (1990), *quoted in Goodall,* 930 F.2d at 368. The Department also said: "At most, [a Virginia law] precludes [local educational agencies] from serving children with handicaps on the site of private sectarian schools." *Id.* Given that the Department (1) tied the requirement for on-site IDEA services at a private school to a child's particular needs, (2) implied a Virginia law prohibited Virginia school corporations from providing services at private sectarian schools, and (3) denied the Goodalls' request for a by-pass which would have absolved the school corporation of responsibility but still provided the federally-required IDEA services, it appears that the Department believed the Goodall child's particular needs did not mandate on-site services.

Based on the limited factual information in the *Goodall* opinion, however, it appears to this court that the needed interpreter there could have been useful only on-site, just as plaintiffs here claim an instructional assistant would be useful to K.R. only on-site. Despite this apparent dissonance, the Department of Education ruling cited by the Fourth Circuit states clearly that whether a public school system must provide a particular ser-

---

4. Agency rulings are entitled to some deference, but "this deference is constrained by [a court's] obligation to honor the clear meaning of a statute, as revealed by its language, purpose, and history." *Southeastern Community College v. Davis,* 442 U.S. 397, 411, 99 S.Ct. 2361, 2369, 60 L.Ed.2d 980 (1979) (quoting *International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers v. Daniel,* 439 U.S. 551, 566 n. 20, 99 S.Ct. 790, 800 n. 20, 58 L.Ed.2d 808 (1979)); *Tribble v. Montgomery County Bd. of Educ.,* 798 F.Supp. 668, 672 (M.D.Ala.1992), *vacated after joint motion to dismiss appeal granted* (1993). A court must also honor the clear meaning of a valid regulation, such as 34 C.F.R. § 76.654(a) in this case.

vice in a private school depends on the facts of the particular situation, and not on a sweeping rule that a school corporation is *never* required to provide IDEA services at a private parochial school. Overall then, this court agrees with the view expressed in the Department of Education ruling cited in *Goodall* but disagrees with the Fourth Circuit's interpretation and application of § 76.654(a).

▮ Regardless of whether the Constitution would compel such a result, Congress and the Department of Education have chosen as a matter of federal educational policy to extend substantial benefits to students in private schools. The IDEA and its regulations tie special education services to students themselves rather than to specific educational sites. *See Zobrest v. Catalina Foothills Sch. Dist.,* — U.S. ——, ——, 113 S.Ct. 2462, 2469, 125 L.Ed.2d 1 (1993). Those regulations create legally enforceable entitlements for all private school students with disabilities, no matter how they were placed. *See Tribble v. Montgomery County Bd. of Educ.,* 798 F.Supp. 668, 671–73 (M.D.Ala.1992), *vacated after joint motion to dismiss appeal granted* (1993). By requiring program benefits for private school students that are "comparable in quality, scope, and opportunity for participation" to those offered to public school students, § 76.654(a) is plainly designed to remove (or at least to minimize) a child's disability as a factor for the child and her parents to consider in choosing between a public school and a private school. Thus, under § 76.654(a), a disabled child and her parents should have essentially the same practical choice between the local public school and a private parochial school that a child without such special needs would have.

There are limits to the theoretical guarantee of an equal choice. Section 76.654(a) does not require that special education benefits for private school students be *identical,* but only that they be "*comparable* in quality, scope, and opportunity for participation" to the benefits for public school students. In *Wheeler v. Barrera,* 417 U.S. 402, 94 S.Ct. 2274, 41 L.Ed.2d 159 (1974), the Supreme Court interpreted identical language in a regulation applying to Title I of the Elemen-

tary and Secondary Education Act of 1965. *See* 417 U.S. at 407, 94 S.Ct. at 2278. The Court held:

> [A]lthough it may be difficult, it is not impossible under the Act to devise and implement a legal local Title I program with comparable services despite the use of on-the-premises instruction in the public schools but not in the private schools.... In order to equalize the level and quality of services offered, something must be substituted for the private school children. The alternatives are numerous.

*Id.* at 424–25, 94 S.Ct. at 2287. Alternatives mentioned included teacher training institutes, Saturday enrichment courses, media centers, educational summer camps, bookmobiles, etc. *Id.* at 425 n. 20, 94 S.Ct. at 2287 n. 20.

The analysis of educational comparability in *Wheeler* dealt with an aggregate group of students, for whom different types of services could be equally beneficial. In the present case involving the IDEA, however, the proper focus must be on K.R.'s particular needs. Here, there simply is no "comparable" alternative to in-class services provided by an instructional assistant, and the school corporation does not claim to be offering one. What the school corporation does offer to K.R. as long as she attends St. Mary's School—periodic contact with an instructional assistant at a public site—would not provide her with the benefit of an instructional assistant at all. Yet the school corporation agrees that if K.R. were to attend public school, it would provide her the benefit of having an instructional assistant in class. Because 34 C.F.R. § 76.654(a) mandates comparable benefits, the school corporation must provide an instructional assistant for K.R. at St. Mary's School.

### *The School Corporation's Defenses*

The school corporation has offered, at different times and in different combinations, three defenses for its refusal to provide an instructional assistant at St. Mary's. First, the school corporation relies on an Indiana regulation that gives it the choice of locations for special education services. Second, the school corporation says K.R. cannot safely

attend St. Mary's with an instructional assistant. Third, the school corporation argues that the Indiana Constitution forbids assistance to parochial schools. As explained below, none of these arguments justifies the school corporation's refusal to provide an instructional assistant here.

The court notes initially that the school corporation's various positions during the last two years reflect, at best, considerable confusion. The school corporation even makes the claim that, while it is looking out for K.R.'s best interests, her parents are "callous and cavalier" toward her safety.[5] Based on the record before this court, that assertion is both absurd and offensive. The record shows that K.R.'s parents have nothing but K.R.'s best interests in mind. They have made, and no doubt are prepared to continue to make, great sacrifices to give her an appropriate education despite the school corporation's failure to fulfill its obligations. In contrast, the twists and turns in the school corporation's positions raise serious doubts about its good faith in at least its recent dealings with K.R. and her family.[6] Nevertheless, no matter when or how offered, the school corporation's arguments are not frivolous and deserve discussion.

■ The Indiana state regulation at issue provides as follows:

At the election of the public school corporation, special education and related services may be provided at:
(1) the private school or facility;
(2) the public school; or
(3) a neutral site.

511 Ind.Admin.Code § 7–4–4(c). The school corporation claims that this regulation gives it the discretion to provide instructional assistant services to K.R. at its public school site and not at St. Mary's.

For other services, the discretion provided by this state regulation may very well be consistent with federal law. For example, the benefit private school students would receive from a speech therapy class held once a week at a public school might well be "comparable" to the benefit public school students would receive from the same class. By that reasoning, the school corporation might be able to choose to provide the speech class only at the public school, and not to provide a separate speech class at the private school. In this case, however, the parties agree that K.R. needs an instructional assistant throughout every school day and that the school corporation would meet this need if K.R. were a public school student. Therefore, under the federal regulation, 34 C.F.R. § 76.654(a), the school corporation must provide an instructional assistant for K.R. at St. Mary's, and under the Supremacy Clause, of course, an applicable federal regulation takes precedence over a state regulation where the two directly conflict. See U.S. Const. art. VI, cl. 2.

In response to an interrogatory, the school corporation suggested that it would be more expensive to provide an instructional assistant at St. Mary's than at the public school.[7] One might imagine a test of comparability that would focus on expense rather than on quality, scope, and access, so that the public school system would have to spend an equal amount of money, but not more, on special services for private school students and public school students. However, § 76.654(a) re-

5. The school corporation states in its brief:
Plaintiffs argue at page 26 of their Brief that the needs of the child and the safety of the child are not relevant to this case. This is indeed a callous and cavalier attitude. Would Plaintiffs insist that K.R. be taught in a building with no heat or one where pieces of the ceiling kept falling on the students? Apparently, Plaintiffs would say that K.R. could wear her winter coat and a football helmet.
Brief of Defendant in Opposition to Complaint, at 8.

6. The record does indicate, however, that some school corporation employees have worked hard for K.R.'s benefit in developing her individual educational plan and providing her with many special educational services. The court does not ignore or intend to demean their efforts.

7. Plaintiffs asked the school corporation to assume the instructional assistant would not have to transport K.R. up and down stairs and then asked the school corporation to state any alternative reason for not providing the instructional assistant at St. Mary's. The school corporation responded: "Lack of supervision for an employee of Defendant. An instructional assistant could perform other duties for Defendant if it were at one of the Defendant's sites."

quires comparability in "quality, scope, and opportunity for participation," without any reference to cost. In fact, 34 C.F.R. § 76.655(b) provides:

The subgrantee [local school corporation] shall spend a different average amount on program benefits for students enrolled in private schools if the average cost of meeting the needs of those students is different from the average cost of meeting the needs of students enrolled in public schools.

Under these regulations, the school corporation must provide an instructional assistant at St. Mary's even if the net cost to the school corporation is more than for an instructional assistant at the local public school.

■ Next, the school corporation's safety argument also does not justify its refusal to provide an instructional assistant at St. Mary's. The school corporation did not even raise any concerns about safety and accessibility until the administrative hearing, long after it had decided not to provide an instructional assistant at St. Mary's. Although it had known for some time that plaintiffs might choose to place K.R. at St. Mary's, it did not actually base its decision on any safety concerns. The school corporation did not send its employees to inspect St. Mary's until after it had made its decision not to provide an instructional assistant there, and after plaintiffs formally requested a hearing to appeal that decision.

Once the school corporation did raise safety as an issue, it assumed the instructional assistant would help K.R. move about at school. Plaintiffs claim in their briefs that M.R. would continue to transport K.R. at school even if a publicly-funded instructional assistant performed other services. However, K.R.'s parents have made the following statements regarding M.R.'s role in providing services:

[I]t is not in K.R.'s best interest to always have her mother present with her as she attends school. Her social, emotional and academic development are hindered by [M.R.'s] constant presence.... [T]he lack

of services of an instructional assistant for K.R. places a burden on [M.R.], in providing those services, and on K.R., in that she will not fully develop socially, emotionally and academically independent of her parents.

Affidavits of M.R. and K.R.R., ¶¶ 13–14. Given the expressed goal of eliminating M.R.'s constant presence at K.R.'s school, this court follows the school corporation's assumption that the instructional assistant, rather than M.R., would be responsible for assisting K.R. move about at school, at least most of the time. Therefore, the school corporation might be liable for negligent actions of the instructional assistant. As noted already, however, extra costs for the school corporation, including potential costs of liability, do not provide a valid basis for the school corporation's decision.

The court assumes that genuine concerns about safety may be relevant in determining whether a school corporation is meeting its obligations under the IDEA and § 76.654(a). But to justify its flat refusal to provide an instructional assistant, the school corporation would need to prove that there would be no reasonably safe way to provide K.R. the services of an instructional assistant at St. Mary's. It has not done so. The evidence the school corporation presented at the administrative hearing to show that K.R. could not safely attend St. Mary's is both vague and scant. In fact, the record shows that K.R. has been attending St. Mary's safely for nearly two years, with her mother acting as an instructional assistant. A safe past does not assure a safe future, but the school corporation's amorphous and *post hoc* concerns for K.R.'s safety do not justify its refusal to comply with 34 C.F.R. § 76.654(a).

■ Finally, the school corporation has also argued that the Indiana Constitution prohibits public money from going to the benefit of any religious institution. It apparently places some reliance on this argument for it asserted in response to an interrogatory: "The Defendant would not provide a related service of an instructional assistant in a physically accessible private school...."[8]

---

8. Of course, this contention further undermines the school corporation's reliance on supposed    concerns about K.R.'s safety.

At oral argument, the school corporation claimed that it is never obligated to provide *any* special education services at a private site to a child placed there voluntarily by her parents. The school corporation admits that it has provided, and is currently providing, special education services at several private parochial schools, including St. Mary's. But the fact that the school corporation has been providing these benefits does not mean that the practice either is or is not constitutional. Again, the school corporation has asked for a decision on this issue, so the court must address it regardless of the school corporation's inconsistency or strategy in making the argument.

The school corporation could not argue, with any hope of success, that it would violate the federal Establishment Clause by providing an instructional assistant at St. Mary's for K.R. *See Zobrest v. Catalina Foothills Sch. Dist.,* — U.S. —, 113 S.Ct. 2462, 125 L.Ed.2d 1 (1993) (holding a public school district did not violate the Establishment Clause in providing an interpreter under the IDEA to a deaf student in a Catholic school). Instead, the school corporation raises the separate possibility of violating a clause of the Indiana Constitution, which provides: "No money shall be drawn from the treasury, for the benefit of any religious or theological institution." Ind. Const. art. I, § 6. The school corporation cites for support a case in which a public trustee responsible for providing emergency food and shelter to the homeless had reimbursed private religious missions that required guests to attend religious services. The Indiana Court of Appeals held that the public trustee violated Article I, Section 6. *Center Township of* *Marion County v. Coe,* 572 N.E.2d 1350, 1360 (Ind.App.1991).

St. Mary's requires its students to attend religious services, but the school corporation is not being asked to pay St. Mary's directly to provide religious or general educational services. Instead, the school corporation is supposed to provide an individual disabled student with special services, no matter what school she attends. The Supreme Court of the United States has held already that "[h]andicapped children, not sectarian schools, are the primary beneficiaries of the IDEA," and "under the IDEA, no funds traceable to the government ever find their way into sectarian schools' coffers." *Zobrest,* — U.S. at —, 113 S.Ct. at 2469, 2468.[9] The school corporation has not shown that Article I, Section 6 of the Indiana Constitution imposes a more stringent standard or requires a different result than the federal Establishment Clause as applied in *Zobrest.* Therefore, the school corporation would not be violating Article I, Section 6 of the Indiana Constitution by providing IDEA services at a private, religious school. *See also* *Felter v. Cape Girardeau Sch. Dist.,* 810 F.Supp. 1062, 1068–70 (E.D.Mo.1993) (public school district would not violate Missouri Constitution by providing specially needed transportation service to private school student under IDEA).[10]

## Conclusion

Plaintiffs' request for declaratory and injunctive relief is granted. The IDEA and related regulations require the Anderson Community School Corporation to provide the services of an instructional assistant to K.R. at St. Mary's School. Because plaintiffs

---

9. "The only indirect economic benefit a sectarian school might receive by dint of the IDEA is the handicapped child's tuition—and that is, of course, assuming that the school makes a profit on each student; that, without an IDEA [service], the child would have gone to school elsewhere; and that the school, then, would have been unable to fill that child's spot." *Id.* at —, 113 S.Ct. at 2468.

10. Even if Article I, Section 6 prohibited the school corporation from providing K.R. an instructional assistant at St. Mary's partially with state funds, the federal Department of Education would be required to provide K.R. the same service with exclusively federal funds. The IDEA states that if a school corporation would violate state law by providing IDEA services to a student placed in a private school, then the U.S. Secretary of Education shall implement a "by-pass" to waive the troublesome requirement for the state. 20 U.S.C. § 1413(d); 34 C.F.R. §§ 300.480–300.481. After a by-pass, the Secretary of Education is responsible for arranging the federally-required services to be provided for the particular child. 20 U.S.C. § 1413(d) (for students placed in private schools by public school corporations); 34 C.F.R. § 300.481 (for all students in private schools).

are entitled to relief under the IDEA, this court need not decide whether the First Amendment's Free Exercise Clause and/or the Religious Freedom Restoration Act would independently require the same result. The court will enter a permanent injunction ordering the Anderson Community School Corporation to comply with its obligations. The court will enter final judgment separately. Plaintiffs shall submit a petition for attorneys fees and costs pursuant to 20 U.S.C. § 1415(e)(4) and 42 U.S.C. § 1988 within the fourteen days provided by Fed.R.Civ.P. 54(d)(2).

So ordered.